S01P1813. LANCE v. THE STATE.
(560 SE2d 663)

BENHAM, Justice.

A jury found appellant Donnie Cleveland Lance guilty of murdering Sabrina "Joy" Lance and Dwight "Butch" Wood, Jr., and of burglary and possession of a firearm during the commission of a crime.[1] The jury fixed the sentence for the murder of Joy Lance at

---

[21] OCGA § 9-11-9.1.

[1] The crimes were committed on November 9, 1997. Appellant was indicted by a Jackson County grand jury on March 3, 1998, on two counts of malice murder, two counts of felony murder, one count of burglary, one count of possession of a firearm during the commission of a crime, and two counts of possession of a firearm by a convicted felon. The State filed written notice of its intent to seek the death penalty on March 19, 1998. Lance's trial began on June 14, 1999, and concluded on June 23 when the jury returned its guilty verdicts and fixed Lance's sentences for the murders at death. The trial court imposed two death sentences on the two malice murder counts in conformity with the jury's sentencing verdicts

death after finding beyond a reasonable doubt that the murder was committed while appellant was engaged in another capital felony (the murder of Butch Wood), was committed while appellant was engaged in a burglary, and was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, and an aggravated battery to the victim. See OCGA § 17-10-30 (b) (2) and (7). The jury fixed the sentence for the murder of Butch Wood at death after finding beyond a reasonable doubt that the murder was committed while appellant was engaged in another capital felony (the murder of Joy Lance) and while appellant was engaged in a burglary. See OCGA § 17-10-30 (b) (2).

1. The evidence presented at trial showed the following. The bodies of the victims were discovered in Butch Wood's home on November 9, 1997. Butch had been shot at least twice with a shotgun and Joy had been beaten to death by repeated blows to her face. Expert testimony suggested they had died earlier that day, sometime between midnight and 5:00 a.m. The door to Wood's home had imprints consistent with size 7½ EE Sears "Diehard" work shoes. Joy's father testified he told appellant Joy was not at home when appellant had telephoned him looking for Joy at 11:55 p.m. on November 8. A law enforcement officer testified he saw appellant's car leave appellant's driveway near midnight. When questioned by an investigating officer, Lance denied owning Diehard work shoes; however, a search of Lance's shop revealed an empty shoe box that had markings showing it formerly contained shoes of the same type and size as those that made the imprints on Wood's door, testimony by Sears personnel showed that Lance had purchased work shoes of the same type and size and had then exchanged them under a warranty for a new pair, and footprints inside and outside of Lance's shop matched the imprint on Butch Wood's door. Officers also

---

and further imposed consecutive terms of imprisonment of twenty years for the burglary and five years for the possession of a firearm during a crime. The other firearm possession charges were dismissed. The felony murder verdicts were properly vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a) (1). Pursuant to a notice of appeal timely filed on July 19, 1999, Lance's appeal was docketed in this Court on December 16, 1999. The appeal was stricken from this Court's docket on February 11, 2000, and the case was remanded for an evidentiary hearing requested by Lance. This Court's remittitur issued on May 11, 2000. After the hearing was concluded, the appeal was docketed again in this Court on August 30, 2001. The absence of a notice of appeal preceding this appeal is not fatal to this appeal (compare *Davidson v. Callaway*, 274 Ga. 813 (559 SE2d 728) (2002); *City of Atlanta v. SDH Investment Corp.*, Case No. S02A0247, decided 11/30/01 (dismissed by unpublished order) since OCGA § 17-10-35 requires mandatory appellate review of cases in which the death penalty is imposed (*Thomas v. State*, 260 Ga. 262 (392 SE2d 520) (1990)), and the Unified Appeal Procedure requires this Court to review a death penalty case whether or not a notice of appeal is filed. See Rule IV A3 (a) (2000). *Colwell v. State*, 273 Ga. 338 (543 SE2d 682) (2001). Oral arguments were heard on February 11, 2002.

retrieved from a grease pit in Lance's shop an unspent shotgun shell that matched the ammunition used in Wood's murder.

Joe Moore testified he visited Lance at his shop during the morning of November 9, 1997, before the victims' bodies were discovered. Referring to Joy, Lance told Moore that "the bitch" would not be coming to clean his house that day. Lance stated regarding Butch Wood that "his daddy could buy him out of a bunch of places, but he can't buy him out of Hell." Lance also informed Moore that Joy and Butch were dead. Moore disposed of several shotgun shells for Lance, but he later assisted law enforcement officers in retrieving them. The State also presented the testimony of two of appellant's jail mates who stated appellant had discussed his commission of the murders.

The State also presented evidence that appellant had a long history of abuse against Joy, including kidnapping, beatings with his fist, a belt, and a handgun, strangulation, electrocution or the threat of electrocution, the threat of burning with a flammable liquid and of death by a handgun and with a chainsaw, the firing of a handgun at or near her, and other forms of physical abuse. Several witnesses testified that appellant had repeatedly threatened to kill Joy if she divorced him or was romantically involved with Butch, and that Lance had also beaten and threatened to kill Butch's wife and several other persons related to Joy. A relative of Joy testified that Lance once inquired how much it would cost to "do away with" Joy and Butch.

Towana Wood, who was Butch's former wife, and Joe Moore testified about an invasion of Butch's home committed by Joe Moore and appellant in 1993. The invasion was prompted in part by appellant's belief that Butch was romantically involved with Joy. In the 1993 incident, appellant kicked in a door to the home, entered carrying a sawed-off shotgun, and loaded the chamber of the shotgun.

Viewing all of the evidence adduced at the guilt/innocence phase in the light most favorable to the jury's guilt/innocence phase verdicts, we conclude that the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Lance was guilty on all charges of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We apply the same standard of review to conclude that the trial court did not err by denying Lance's motion for a directed verdict at the conclusion of the guilt/innocence phase. *Miller v. State*, 270 Ga. 741, 742 (1) (512 SE2d 272) (1999).

*Pretrial Issues*

2. After receiving briefs from Lance and conducting an ex parte hearing, the trial court issued an ex parte order granting Lance

$4,000 for investigative assistance and denying his request for funds to hire several experts. Lance argues on appeal that the trial court erred by denying his request for funds to hire experts on the issues of time of death and latent footprint analysis.

This Court has held the following:

> A motion on behalf of an indigent criminal defendant for funds with which to obtain the services of a scientific expert should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services.

*Roseboro v. State*, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988). The decision whether to grant or deny an indigent criminal defendant's motion for the appointment of an expert rests within the trial court's sound discretion, and the trial court's decision will be upheld in the absence of an abuse of discretion. *Crawford v. State*, 267 Ga. 881 (2) (485 SE2d 461) (1997). Our review of the record indicates that Lance's request for the contested funds was too unspecific, uncertain, and conclusory to support a finding that the trial court abused its discretion in concluding that the requested funds were not necessary to a fair trial. See *Thomason v. State*, 268 Ga. 298 (7) (486 SE2d 861) (1997).

3. After reviewing the record, we conclude the trial court did not abuse its discretion by denying Lance's motion for a continuance filed one month before trial. See OCGA § 17-8-22; *Johnson v. State*, 271 Ga. 375 (8) (519 SE2d 221) (1999).

4. Appellant sees error in the trial court's denial of appellant's pre-trial motion to preclude the State from seeking the death penalty. Appellant's motion was based on his assertion that the State would not be able to prove its case against appellant. In order for the trial court to have granted appellant's motion, appellant would have had to prove that the State could not prove its case against him. See *Speed v. State*, 270 Ga. 688 (49) (512 SE2d 896) (1999); *Jenkins v. State*, 269 Ga. 282 (2) (498 SE2d 502) (1998) (motion to preclude State from seeking death penalty properly denied when movant did not prove grounds on which motion was based). Appellant did not carry his burden; accordingly, the trial court did not err in denying the motion.

### Voir Dire

5. Contrary to appellant's assertion, the process of qualifying potential jurors on the basis of their death penalty views is not

unconstitutional. *DeYoung v. State*, 268 Ga. 780 (11) (493 SE2d 157) (1997).

6. The trial court did not err by denying appellant's request that he be permitted to conduct voir dire about potential jurors' views on the meaning of a life sentence. In *Zellmer v. State*, 272 Ga. 735 (1) (534 SE2d 802) (2000), this Court held that criminal defendants and the State are entitled to examine potential jurors on their inclinations and biases regarding parole, but the examination

> should be limited to jurors' willingness to consider both a life sentence that allows for the possibility of parole and a life sentence that does not. Exposure to the complexities of the future role of the Board of Pardons and Paroles . . . is not an appropriate matter for voir dire. Likewise, because OCGA § 17-10-31.1 (d) authorizes the trial court to charge the jury on the meaning of life imprisonment without parole and life imprisonment, "the juror(s)' beliefs regarding the *meaning* of those options (are) not a proper subject for voir dire."

7. Lance complains that both the trial court and the prosecutor asked questions during voir dire that amounted to improper "coaching" of potential jurors on issues related to the jurors' death penalty qualifications. Since appellant did not object to any of the allegedly improper questions, this claim has been waived. See *Whatley v. State*, 270 Ga. 296 (5) (509 SE2d 45) (1998).

8. Lance contends the trial court erred when it qualified three potential jurors who appellant believes automatically would have imposed a death sentence upon a conviction for murder. Because Georgia law entitles a defendant to a panel of 42 qualified jurors, the erroneous qualifying of a single juror for the panel from which the jury was struck requires reversal. *Lively v. State*, 262 Ga.510 (2) (421 SE2d 528) (1992). "A juror who will automatically vote for the death penalty in every case" upon a conviction for murder is not qualified to serve. *Morgan v. Illinois*, 504 U. S. 719, 729 (112 SC 2222, 119 LE2d 492) (1992). This is true because such a juror, instead of giving consideration to mitigating circumstances, begins the trial with an unwavering bias in favor of one of the sentences authorized under law, to the exclusion of the others. See *Zellmer*, 272 Ga. at 736 (1). A potential juror's views on capital punishment will disqualify the juror from service if the juror's views would prevent or substantially impair the performance of the juror's duties as a juror in accordance with the instructions given the juror and the oath taken by the juror. *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997). See also *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985). In conducting our review, this Court views the voir dire of

each juror as a whole and gives deference to the findings of the trial court concerning any juror's possible bias. *Greene*, 268 Ga. at 48.

(a) Although prospective juror Casey stated that he believed in "an eye for an eye" and thought the death penalty should be given for a "violent murder," he also gave responses by which he indicated he would not automatically impose a death sentence upon a conviction for murder, he would consider any mitigating evidence that might be presented, and he would consider all three possible sentences.

(b) Prospective juror Dial acknowledged he would not automatically give a death sentence in every murder case. Although the juror later indicated he would have strong feelings in favor of the death penalty upon a conviction for murder and once stated that "if you're found guilty of murder you should get the death penalty," he also indicated he would listen to "additional evidence" after a murder conviction and follow the law as given by the trial court.

(c) Prospective juror Braswell "guess[ed]" and "imagine[d]" that the death penalty would be the appropriate punishment for a murder. However, the juror also indicated he would give consideration to both a life and a death sentence, he would not automatically vote for the death penalty, and he would follow the law as given by the trial court.

Viewing as a whole the voir dire of each of these prospective jurors, we conclude that the trial court did not abuse its discretion by finding the jurors qualified.

9. Lance also argues the trial court erred when it refused to disqualify four prospective jurors who allegedly would not consider a life sentence.

As discussed above, a juror who will consider only a death sentence upon a conviction for murder is not qualified to serve in a death penalty case. Under Georgia law, the proper standard to be applied by the trial court where a juror disfavors life with the possibility of parole as a sentencing option is the standard applied where a juror so favors the death penalty that he or she might not give consideration to mitigating evidence and a life sentence with or without the possibility of parole. As stated above, that standard is whether the juror's views would prevent or substantially impair the performance of the juror's duties in accordance with the trial court's instructions and the juror's oath. *Greene*, 268 Ga. at 48. In conducting our review of the trial court's action, this Court views the voir dire of each juror as a whole and affords due deference to the trial court's application of this standard, both in the context of death versus life and in the context of life without the possibility of parole versus life with the possibility of parole. See *Greene*, 268 Ga. at 48.

(a) While juror Howard indicated he might favor or "lean towards" the death penalty upon a conviction for murder, he also

indicated several times he would not automatically select the death penalty and he would give consideration to both life without the possibility of parole and life with the possibility of parole. We find no abuse of discretion in the trial court's determination that juror Howard was qualified.

(b) Our review of the record confirms the State's assertion that Lance did not move the trial court to disqualify the three other prospective jurors (Little, Atha, and Flint) of whom appellant now complains. The trial court did not err in failing to disqualify these jurors sua sponte. *Whatley*, 270 Ga. at 298 (3).

10. Lance contends the trial court erred in excusing prospective juror McCullers despite the juror's willingness to consider the death penalty as a sentencing option. Applying the same standard used in Divisions 8 and 9 and affording the trial court's determination the same deference, we conclude the trial court did not abuse its discretion by excusing this juror over Lance's objection. Juror McCuller's voir dire responses, viewed as a whole, demonstrated he did not believe it would be possible for anything presented at trial to overcome his strong religious conviction that he must not take part in imposing a death sentence. *Greene*, 268 Ga. at 51.

11. On appeal, Lance contends that jurors Peters, Witcher, and Dockery were unqualified to serve based on opinions formed through exposure to pretrial influences. Lance made no motion to excuse jurors Peters or Dockery, and the trial court did not err by failing to excuse these two jurors sua sponte. See *Whatley*, 270 Ga. at 297-298 (2). Our review of the record indicates that the trial court did not abuse its discretion in finding that juror Witcher did not hold any fixed opinions that would require her disqualification. See id.

12. Lance asserts that the State's race-neutral reasons for striking three African-American jurors were insufficient. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). After reviewing the State's asserted reasons for its strikes, we conclude the trial court was not clearly erroneous when it determined appellant had failed to carry his burden of showing that the State was motivated by discriminatory intent in the exercise of its strikes. See *Barnes v. State*, 269 Ga. 345 (6) (496 SE2d 674) (1998).

### Guilt/Innocence Phase

13. Lance argued at trial that he should be permitted in the guilt/innocence phase to introduce evidence and to conduct direct and cross-examination concerning purported acts of violence by the victims against appellant and by Butch against Joy, and purported violent and illegal incidents involving the victims and third parties.

(a) This Court has long held that, as a general rule, evidence of

the character of a murder victim is irrelevant and inadmissible at trial. *Henderson v. State*, 234 Ga. 827 (1) (218 SE2d 612) (1975).[2] However, a defendant may present evidence of a victim's violent and turbulent character when the defendant can make a prima facie showing of justification: that the victim was the assailant, the defendant was assailed, and the defendant was honestly seeking to defend himself. Id. See also *Lewis v. State*, 268 Ga. 83 (2) (485 SE2d 212) (1997) (admission of victim's specific acts of prior violence must be preceded by same three-pronged showing that victim was the assailant, appellant was the assailed, and appellant acted to defend himself). In the case at bar, appellant did not assert the defense of justification; therefore, the exception to the general rule is inapplicable, and the trial court did not err when it did not permit appellant to present evidence of the victims' purported bad character or their purported acts of violence against third parties.

Since the trial court announced it would allow evidence of any acts of violence by either victim that tended to directly rebut the State's evidence of Lance's prior acts of violence against the victims, we need not address appellant's assertions that the trial court would not permit him to present such evidence. Appellant's theory that Butch might have murdered Joy and then have been murdered himself by some other person in retaliation was too speculative and unsupported to justify a suspension of the prohibition against evidence of Butch's alleged bad character and past violent acts. The limitation actually imposed by the trial court regarding the other proffered evidence of the victims' characters and past acts discussed by Lance on appeal was proper, as Lance's proffered evidence would have served no proper purpose in the guilt/innocence phase of his trial. Finally, appellant's argument that the State "opened the door" to evidence of the victims' connection to an alleged drug dealer is without merit, because the incidental introduction of some such evidence by the State through Lance's own unedited, audiotaped statement did not harm Lance and, accordingly, should not be regarded as imparting a right upon Lance to introduce cumulative evidence for an improper purpose.

(b) A criminal defendant has the right to present evidence tending to show that another person is the guilty party. See *Henderson v. State*, 255 Ga. 687 (1) (341 SE2d 439) (1986). In order for such evidence to be admitted, it cannot raise the mere speculation that some other person committed the crime. Instead, "the proffered evidence must raise a reasonable inference of the defendant's innocence. . . ."

---

[2] "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2.

*Klinect v. State*, 269 Ga. 570 (3) (501 SE2d 810) (1998). See also *Azizi v. State*, 270 Ga. 709 (6) (512 SE2d 622) (1999). The trial court did not err in concluding that appellant's potential evidence that the victims allegedly used and sold illegal drugs and that two unidentified persons seven years earlier had kicked in Butch's door, abducted him, and beat him raised no such reasonable inference.

(c) Contrary to his assertions on appeal, Lance has shown no instance in the record where he was prevented from attempting to impeach the State's witnesses or hearsay declarants by the methods permitted under Georgia law. See *Smith v. State*, 270 Ga. 240 (5) (510 SE2d 1) (1998) (noting that hearsay declarants may be impeached only by same methods applicable to witnesses testifying at trial).

14. The trial court did not err by refusing to apply the necessity exception to the hearsay rule to appellant's proffer of the hearsay statements of a witness living in Arizona whom Lance had not attempted to subpoena under interstate subpoena procedures. Compare *Cook v. State*, 273 Ga. 574 (3) (543 SE2d 701) (2001).

15. The trial court was not clearly erroneous when, after conducting a pretrial hearing, it ruled that the similar transactions proffered by the State at the hearing and subsequently admitted into evidence at trial were sufficiently similar to the crime being tried and were not too remote in time. See *Mullins v. State*, 269 Ga. 157 (2) (496 SE2d 252) (1998).

16. The trial court did not err by allowing evidence of prior difficulties between Lance and the victims.

> [E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

*Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

17. The trial court did not abuse its discretion in concluding that the hearsay statements of Joy introduced at trial were attended by sufficient particularized guarantees of trustworthiness to be admissible under the necessity exception to the hearsay rule. See *Gissendaner v. State*, 272 Ga. 704 (6) (532 SE2d 677) (2000).

18. The evidence of similar transactions and prior difficulties admitted by the trial court did not impermissibly place Lance's character at issue. See *McKissick v. State*, 263 Ga. 188, 189 (2) (429 SE2d 655) (1993).

19. Appellant contends that the trial court erred by refusing to suppress the fruits of a number of searches. We find no error.

(a) Lance argues that a search conducted on November 10, 1997, was unlawful because the consent form he signed did not sufficiently limit the search, making the search an allegedly illegal "general search." There is no merit in this argument since the consent form Lance signed clearly indicated the potentially extensive scope of the search to be conducted, Lance gave oral consent to the scope of the search actually conducted, and Lance attended the actual search and never withdrew his consent. See also *Hall v. State*, 239 Ga. 832 (1) (238 SE2d 912) (1977) (where actual consent is given, considerations applicable to non-consensual searches generally do not apply).

(b) Lance argues that the searches conducted pursuant to warrants on the following dates were unlawful: November 11, 1997; December 5, 1997; January 19, 1998; and June 15, 1998. For the reasons set forth below, we conclude that each of these searches was lawful because the magistrate had a substantial basis for concluding probable cause existed and the search warrants that issued were sufficiently limited in scope.

In deciding whether to issue a search warrant, the magistrate makes

> a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). The duty of the reviewing court is " 'to ensure that the magistrate had a "substantial basis for conclud(ing)" that probable cause existed.' " Id. After reviewing the record in light of appellant's arguments, we have determined there was before the magistrate a substantial basis to conclude that probable cause existed for each of the warrants in question. Our review of the record also leads us to dismiss as without merit appellant's assertion that the magistrate did not view the totality of the circumstances "for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant." *Lewis v. State*, 255 Ga. 101, 104 (2) (335 SE2d 560) (1985). See *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983); *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984).

Appellant also complains the report of a "confidential witness" was improperly relied upon to show probable cause for the November

11, 1997, warrant. Although several unnamed witnesses were described in the affidavit used in the application for the warrant, these witnesses appear likely to have been merely "citizen informers" rather than the sort of "informants" typically deemed suspect without a showing of reliability. See 3 LaFave, Search and Seizure § 3.3, pp. 88-89 and § 3.4 (a), p. 205 (3rd ed. 1996). While naming the witnesses might have offered additional indicia of reliability by dispelling any suspicion the witnesses were fictitious or were somehow less credible than ordinary citizens, sufficient other facts from named and reliable sources were presented in the affidavit to show probable cause.

Appellant also maintains that the magistrate who issued the December 5, 1997, warrant relied upon affidavit testimony about a "confidential witness" who had informed the affiant of a large hole filled with water on Lance's property that had not yet been searched. Even assuming that use of the report of this witness, unlike the reports of ordinary citizens, required a special showing of the witness's veracity, the affidavit specifically indicated that the witness had previously given information that had led to the discovery of "fruits" of the murders committed in this case. Accordingly, there is nothing objectionable in the magistrate's partial reliance on the witness's report.

Having determined that probable cause was shown for the issuance of each of the warrants in question at the time of their issuance, we turn to the question of whether the warrants were sufficiently limited in scope. Each warrant authorized a search for specified items of potential evidence as well as for "any other fruits of the crime of murder." Appellant contends the latter phrase authorized an impermissible "general search." The quoted phrase is understood as limiting the search to items (in addition to the items specifically mentioned in the warrant) reasonably appearing to be connected to the specific crime delineated in the warrant. Because of the nature of the probable evidence and "fruits" of the specific crime delineated, we conclude that the warrant did not authorize an unlawful general search in contravention of the Fourth and Fourteenth Amendments or of parallel provisions in Georgia law. See *Andresen v. Maryland*, 427 U. S. 463, 479-482 (96 SC 2737, 49 LE2d 627) (1976); *United States v. Logan*, 250 F3d 350, 365 (II) (B) (1) (6th Cir. 2001) ("A description contained in a warrant is sufficiently particular if it is as specific as the circumstances and the nature of the alleged crime permit."); *United States v. Smith*, 918 F2d 1501, 1507-1508 (II) (11th Cir. 1990); *United States v. Buck*, 813 F2d 588, 591 (II) (2d Cir. 1987) (noting that " 'boilerplate' language in a warrant" is more likely to be found permissible when "it was preceded by a list of specific items to be sought"); *United States v. Christine*, 687 F2d 749, 752-753 (II) (3d

Cir. 1982); see also *United States v. George*, 975 F2d 72, 75-77 (I) (A) (2d Cir. 1992) ("[A]uthorization to search for 'evidence of *a* crime,' that is to say, any crime, is so broad as to constitute a general warrant."); *United States v. Maxwell*, 920 F2d 1028, 1033-1034 (II) (A) (D.C. Cir. 1990) (holding that reference in a search warrant to certain crimes might be sufficiently narrowing but that reference to other crimes might leave the scope of the authorized search too broad).

20. Appellant's failure to demonstrate the trial court abused its discretion in deciding when to adjourn in the evenings of the trial makes his assertion of error in that regard without merit. *Spencer v. State*, 260 Ga. 640 (9) (398 SE2d 179) (1990).

21. We find no error in the trial court's overruling Lance's "continuing witness" objection to the admission into evidence of diagrams of the crime scene and of Lance's shop since the "continuing witness" objection is not applicable to drawings or other documents which, as here, were admitted into evidence and were "demonstrative evidence that serve[d] only to illustrate testimony given by the witnesses." *James v. State*, 270 Ga. 675 (7) (513 SE2d 207) (1999). Lance raised no constitutional objections to the diagrams and we see no merit in his conclusory appellate argument that a constitutional violation occurred.

22. Lance contends that the trial court erred by propounding to a certain witness questions submitted in writing to the trial court by the jury. While jurors may not ask questions of witnesses *directly* (*Hall v. State*, 241 Ga. 252 (4) (244 SE2d 833) (1978)), a trial court may receive written questions from the jury and ask those questions the court finds proper. *Story v. State*, 157 Ga. App. 490 (278 SE2d 97) (1981). See *Matchett v. State*, 257 Ga. 785 (2) (364 SE2d 565) (1988), where this Court noted that the trial court "properly instructed the jury as to the appropriate form of asking questions" which was "to submit any questions they might wish to have answered to the trial court in writing at the conclusion of the witness' testimony." The trial court did not abuse its discretion in propounding the questions at issue in a manner that intimated no opinion held by the trial court in an effort to fully develop the truth of the case. *Eubanks v. State*, 240 Ga. 544 (2) (242 SE2d 41) (1978). We also find no error in the trial court having read aloud to the parties another question submitted by the jury in writing and then allowing the State to ask the question when a witness was later testifying. See *Story v. State*, supra, 157 Ga. App. 490.

23. Lance contends that the trial court erred when it declined to declare a mistrial when a State's witness being cross-examined by defense counsel testified he had taken and passed a polygraph examination. The trial court's strong curative instruction and its questioning of the jury regarding their ability to follow that instruction were

sufficient to remedy any damage to the fairness of the proceedings. Accordingly, the trial court did not abuse its discretion in denying Lance's renewed motion for a mistrial. *Evans v. State*, 256 Ga. 10 (5) (342 SE2d 684) (1986). Compare *Morris v. State*, 264 Ga. 823 (2), (3) (452 SE2d 100) (1995), where no curative instructions were given.

## Sentencing Phase

24. The trial court's failure to charge the jury that its findings of statutory aggravating circumstances must be unanimous was not reversible error because the trial court charged the jury that its sentencing verdict must be unanimous. *Wilson v. State*, 271 Ga. 811 (12) (525 SE2d 339) (1999).

25. The jury found beyond a reasonable doubt that the murder of Joy was committed during the murder of Butch and that the murder of Butch was committed during the murder of Joy. See OCGA § 17-10-30 (b) (2). The trial court did not err by submitting both of these statutory aggravating circumstances to the jury for its consideration since both were supported by the evidence. *Heidler v. State*, 273 Ga. 54 (22) (537 SE2d 44) (2000). However, following this Court's rule against "mutually supporting aggravating circumstances," we set aside the jury's finding that the murder of Joy was committed during the murder of Butch (id.), but we need not vacate the death sentence imposed for Joy's murder since it remains supported by at least one remaining statutory aggravating circumstance. See Division 26, infra. *Heidler v. State*, 273 Ga. 54 (22); *Jenkins v. State*, 269 Ga. at 294 (23) (a).

26. Although there was evidence that many of the blows inflicted upon Joy likely would have rendered her unconscious, there was also sufficient evidence to support the jury's finding that Joy's murder was outrageously or wantonly vile, horrible, or inhuman and that her murder involved torture, depravity of mind, and an aggravated battery against her before her death. See OCGA § 17-10-30 (b) (7). There was evidence that Butch had been murdered by multiple shotgun blasts in the same dwelling as Joy and within her hearing before she was killed; that Joy had been taken from the bed and thrust face first into a door; and that Joy was returned to the bed and brutally beaten repeatedly in the face until she was horribly disfigured as well as dead. We reject appellant's argument that this statutory aggravating circumstance was used in his case as an unlawful "catchall" that failed to narrow appropriately the application of the death penalty. See *Phillips v. State*, 250 Ga. 336 (6) (c) (297 SE2d 217) (1982); *Hance v. State*, 245 Ga. 856 (3) (268 SE2d 339) (1980). Compare *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980). We note with approval that the trial court's charge to the jury on the OCGA

§ 17-10-30 (b) (7) statutory aggravating circumstance tracked the charge recommended by this Court in *West v. State*, 252 Ga. 156, 161-162 (313 SE2d 67) (1984). See Suggested Pattern Jury Instructions, Vol. II: Criminal Charges, Part 4 (B), pp. 84-86 (1999).

27. OCGA § 17-10-1.2, which authorizes the presentation of certain victim impact testimony, is not unconstitutional. *Livingston v. State*, 264 Ga. 402 (444 SE2d 748) (1994). Appellant has not demonstrated how the victim impact testimony presented at the sentencing phase of his trial exceeded the limits set in *Turner v. State*, 268 Ga. 213, 214-215 (486 SE2d 839) (1997). Although the testimony was not read from written statements previously scrutinized outside the jury's presence by the trial court and counsel as this Court recommended in *Turner*, there is nothing in the record indicating that this omission resulted in the admission of unlawfully prejudicial testimony and/or courtroom demeanor that the recommended procedure was designed to avoid. Cf. *Johnson v. State*, 271 Ga. at 385 (19).

28. Lance has failed to demonstrate that the trial court erred by admitting, over Lance's objection during the sentencing phase, certain photographs of the victims and their family members. See OCGA § 17-10-1.2 (a) (1).

29. Appellant has not shown error in the trial court's admission into evidence of either a wooden paddle with Joy's name written on it that appellant had used to beat her, or a photograph of that paddle. "[B]ad character evidence is admissible in the sentencing phase." *Gulley v. State*, 271 Ga. 337 (8) (519 SE2d 655) (1999).

30. Appellant asserts that his cross-examination of certain witnesses during the sentencing phase was improperly limited by the trial court's previous rulings regarding evidence and testimony about the victims' alleged past bad acts and alleged bad characters. Pretermitting the question of what are the appropriate limits to evidence of a victim's character and past acts at the sentencing phase of a death penalty trial, we note that appellant is mistaken about the limits placed upon counsel at the sentencing phase. The trial court advised counsel that "the Court's limitations as to evidence in the first part of the trial are not necessarily the same in the second part of the trial, that there is a greater – a relaxation of some evidentiary rules in the sentencing phase[.]" The trial court restated the point twice, the second time specifically indicating that the previous rulings on the State's motions in limine were no longer in force. In light of the trial court's statements, appellant has failed to show trial court error with regard to any alleged limitations placed upon him under these circumstances.

31. During the sentencing phase, Lance objected on hearsay grounds to the introduction of two letters written by Joy's son after her death, both of which expressed the child's love for his mother, the

fact that he missed her and longed to see her, and the fact that he cried at certain times. While the trial court erred in overruling that hearsay objection on the ground that the letters were not offered to demonstrate the truth of the matter asserted therein (see *Gissendaner*, 272 Ga. at 714-715 where the hearsay rules were applied to letters written by children), we nevertheless conclude that the error was harmless in light of the cumulative evidence already properly admitted regarding the child's thoughts and emotional state. Appellant's argument regarding the inclusion in one of the letters of the titles of two songs does not alter our finding of harmlessness.

32. Although we have held that it "might be the better practice" to charge the jury on the subject of the credibility of witnesses during the sentencing phase as well as at the conclusion of the guilt/innocence phase, the failure to do so is not reversible error where a proper charge was given during the guilt/innocence phase. *Wilson*, 271 Ga. at 818.

33. The trial court did not err when it failed to charge the jury that findings regarding mitigating circumstances need not be unanimous since the trial court properly charged the jury it was not necessary to find *any* mitigating circumstances in order to return a sentence less than death. *Gissendaner*, 272 Ga. at 716.

34. The trial court did not err by refusing to allow evidence regarding the possible timing of Lance's parole eligibility if the jury were to impose a sentence of life imprisonment rather than a sentence of life imprisonment without parole or a sentence of death. See *Philpot v. State*, 268 Ga. 168 (2) (486 SE2d 158) (1997); *Burgess v. State*, 264 Ga. 777 (33) (450 SE2d 680) (1994).

The trial court properly charged the jury on the meaning of life imprisonment without parole. See OCGA § 17-10-31.1 (d).

## *Proceedings Held on Remand*

35. Upon Lance's motion, this Court remanded this case for an evidentiary hearing regarding a letter written to a newspaper by Frankie Shields, one of the State's witnesses at trial. In the letter, Shields claimed the State had reneged on a promise, made in exchange for his testimony against appellant, to move him to a prison closer to his home. Shields's testimony at the hearing held on remand indicated he lied in his letter to the newspaper. That evidence authorized the trial court to find that no deal had been offered to or made with Shields by the State and, accordingly, the conclusion that Lance's claim of alleged suppression of exculpatory evidence must fail. See *McGee v. State*, 272 Ga. 363 (2) (529 SE2d 366) (2000) (trial court was authorized to weigh conflicting testimony and to conclude that defendant failed to prove he was deprived of any exculpa-

tory material); *Jolley v. State*, 254 Ga. 624 (5) (331 SE2d 516) (1985); see also *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).

36. Appellant contends the trial court erred when it permitted the district attorney to continue to serve as the prosecutor after the DA testified at the post-trial hearing concerning the purported deal Shields had made with the DA in exchange for his trial testimony against appellant. Inasmuch as the district attorney's testimony was limited to a rebuttal of the contents of Shields's letter and was given nearly a year after the jury found appellant guilty, none of the dangers inherent in having an attorney testify in court was present. See *Timberlake v. State*, 246 Ga. 488 (7) (271 SE2d 792) (1980) (trial court has discretion to allow a prosecutor to testify as a rebuttal witness).

### Constitutional Questions

37. There is no merit to Lance's allegations that OCGA § 17-10-30 et seq. violated his right to "fundamental fairness," that those statutes are "vague and overbroad and not properly applied to the facts of this case," or that they are otherwise unconstitutional in general or in his case. See *Gregg v. Georgia*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *Morrow v. State*, 272 Ga. 691 (15) (532 SE2d 78) (2000). Compare *Godfrey*, 446 U. S. 420.

38. Because this Court has directed that all future executions in Georgia be carried out by lethal injection, Lance's argument that execution by electrocution is unconstitutional is moot. See *Dawson v. State*, 274 Ga. 327, 328 (554 SE2d 137) (2001).

### Sentence Review

39. Upon our review of the record, we conclude that the evidence adduced in the two phases of Lance's trial was sufficient to enable a rational trier of fact to find beyond a reasonable doubt the existence of the statutory aggravating circumstances supporting the death sentences in this case. See *Jackson v. Virginia*, 443 U. S. 307; OCGA § 17-10-35 (c) (2).

40. Lance committed the two murders for which he has been sentenced to death as the culmination of a long history of abuse and violence and after announcing repeatedly his intent to harm the victims. See *Gissendaner*, 272 Ga. at 717 (19) (a) (noting that past conduct is relevant to proportionality review). Considering both the crimes and the defendant, we conclude that the death sentences imposed for the murders in this case were neither excessive nor disproportionate to the penalties imposed in similar cases in this State. OCGA § 17-10-35 (c) (3). The cases appearing in the Appendix support this conclu-

sion in that they demonstrate the willingness of juries to impose a death sentence where a defendant has murdered more than one person.

41. After reviewing the record of this case, we conclude that the death sentences in this case were not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., Hunstein, Thompson, Carley and Hines, JJ., who concur in judgment only as to Division 22.*

### APPENDIX.

*Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Blanks v. State*, 254 Ga. 420 (330 SE2d 575) (1985); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Rivers v. State*, 250 Ga. 303 (298 SE2d 1) (1982); *Rivers v. State*, 250 Ga. 288 (298 SE2d 10) (1982); *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981).

DECIDED FEBRUARY 25, 2002 —
RECONSIDERATION DENIED MARCH 28, 2002.

*J. Richardson Brannon*, for appellant.

*Timothy G. Madison, District Attorney, Thurbert E. Baker, Attorney General, Patricia B. Attaway, Romin Alavi, Assistant Attorneys General*, for appellee.