## S06A0420. McWILLIAMS v. THE STATE.
### (632 SE2d 127)

HINES, Justice.

Marvin Louis McWilliams appeals his conviction for felony murder in connection with the death of his wife, Jacqueline Andrews McWilliams. For the reasons that follow, we affirm.[1]

Construed to support the verdict, the evidence showed that Jacqueline McWilliams's body was discovered in a stream on April 22, 1997. She had been strangled to death, and had some bruising and lacerations around her face. Investigators went to the house she shared with her husband, Marvin McWilliams, but no one answered. They left a card asking McWilliams to telephone them; he did so, and agreed to meet the investigators.

McWilliams at first said that he knew nothing about his wife's death, and gave consent to search his car. When told that the search was for forensic evidence, he said that he wanted to tell the investigators what had occurred. He was then read his *Miranda* rights[2] and signed a waiver form; his statement was recorded. He said that the couple's marriage had difficulties and that shortly after midnight on the morning of April 20, 1997, he returned home from work. The victim entered the home a few minutes later, and the couple argued; the victim became loud and overturned furniture, and struck McWilliams. He grabbed her by the throat, and choked her until she fell limp to the floor; he continued to choke her. He then wrapped her body in

---

[1] Jacqueline Andrews McWilliams was killed on April 20, 1997. On June 10, 1997, a Richmond County grand jury indicted McWilliams for malice murder and felony murder while in the commission of aggravated assault. McWilliams was tried before a jury and found guilty of felony murder and acquitted of malice murder; his conviction was reversed in *McWilliams v. State,* 271 Ga. 655 (521 SE2d 824) (1999). He was again tried before a jury on July 10-11, 2000, and found guilty of felony murder. On August 16, 2000, he was sentenced to life in prison. McWilliams filed a notice of appeal on August 23, 2000. On October 30, 2003, McWilliams moved for a new trial on the ground that no transcript of his trial could be prepared. The trial court granted a new trial on that basis on November 22, 2004. On June 2, 2005, the trial court noted that the transcript had been provided, reinstated the conviction and sentence, and ordered that McWilliams could move for a new trial or file a notice of appeal within 30 days. McWilliams moved for a new trial on July 1, 2005, which the trial court denied on October 14, 2005. McWilliams filed his notice of appeal from the denial of his motion for new trial on October 17, 2005, the appeal was docketed in this Court on November 4, 2005, and submitted for decision on January 2, 2006.

[2] See *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

a blanket, placed it in the back of his vehicle, and drove around for a period of time. He then parked by the ravine in which she was found, carried the body in the blanket to the side of the ravine, lifted the blanket, and let the body roll into the ravine, and heard it hit the water.

1. The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that McWilliams committed the crime of felony murder while in the commission of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The State introduced three photographs of the victim's body to which McWilliams objected on the grounds that they were unnecessarily inflammatory and gruesome. He now enumerates as error the admission of one of the photographs. Although McWilliams characterizes this photograph as one taken after autopsy incisions, citing *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), the photograph was in fact taken before autopsy incisions, and shows an exterior mark of strangulation. "Pre-incision photos such as the one[ ] currently at issue which depict the location and nature of the victim's wounds are admissible because they are relevant and material." *Rucker v. State*, 270 Ga. 431, 433 (4) (510 SE2d 816) (1999). Further, examination of the photograph shows that it was not an abuse of discretion to deny the motion to exclude it as overly gruesome and inflammatory. See *Moody v. State*, 277 Ga. 676, 680 (5) (594 SE2d 350) (2004).

3. McWilliams sought to introduce evidence of the victim's history of illegal drug use and prostitution. At trial, he contended that the information was relevant to his defense of voluntary manslaughter, as these practices of the victim were a constant source of conflict in the couple's marriage, and precipitated the argument during which McWilliams killed her. However, before this Court, he relies upon the principle that

> a defendant may present evidence of a victim's violent and turbulent character when the defendant can make a prima facie showing of justification: that the victim was the assailant, the defendant was assailed, and the defendant was honestly seeking to defend himself. [Cits.]

*Lance v. State*, 275 Ga. 11, 18 (13) (a) (560 SE2d 663) (2002). This is an exception to the general rule that the character of a murder victim is irrelevant and inadmissible at trial. Id. However, assuming that the asserted error was preserved for review, and that the evidence he wished to introduce reflected upon the "victim's violent and turbulent character," id., "[i]n the case at bar, appellant did not assert the defense of justification; therefore, the exception to the general rule is

inapplicable, and the trial court did not err when it did not permit appellant to present evidence of the victim['s] purported bad character. . . ."[3] Id.

4. The trial court ruled that McWilliams could not introduce evidence that the victim's autopsy revealed that she had cocaine metabolites in her blood and a blood alcohol level of 0.22. As previously stated, the general, although not universal, rule is that evidence implicating the character of a murder victim is irrelevant and inadmissible at trial. Id. In *Robinson v. State*, 272 Ga. 131, 133 (3) (527 SE2d 845) (2000), the defendant sought to introduce evidence of cocaine metabolites in the victim's blood for reasons similar to those McWilliams advanced; the defendant wished to use the evidence to support his assertion that he was guilty of only voluntary manslaughter, arguing that the cocaine in the victim's system caused him to act aggressively, providing the element of provocation for that crime. See OCGA § 16-5-2 (a). This Court upheld the trial court's exclusion of the evidence on the ground that the defendant had not shown what, if any, effect the drugs might have had on the victim at the time of the homicide. Id.

But McWilliams did offer such evidence. Outside the jury's presence, the medical examiner testified that he had studied the literature on the subject, and stated that alcohol produces a sense of euphoria that stops the user's inhibitions, that there is a euphoria associated with cocaine, and that a compound develops from the combination of the two that, in some people, produces strange behavior, including aggression. He also testified that a person under the influence of these substances could be combative or confrontational.[4] Thus, McWilliams produced proper evidence of a causal connection between the presence of cocaine and alcohol in the victim's body and

---

[3] McWilliams did not request a jury instruction on justification. Rather he sought charges on insanity and voluntary manslaughter. When arguing his request to introduce evidence of the victim's history of drug use and prostitution, he specifically asserted to the trial court that "[t]he only argument we're making to the jury is that he's guilty of a lesser offense of manslaughter"; at no point did he contend that he had made a prima facie showing of justification.

[4] The State contends that evidence that the victim had drugs in her body at the time of her death is relevant and admissible *only* "if the defendant can prove with some degree of certainty that the drugs caused the victim to be violent," citing *Daniels v. State*, 276 Ga. 632, 633 (2) (580 SE2d 221) (2003). However, this contention reaches beyond the quoted language. *Daniels* was based upon *Robinson*; no issue was presented in *Daniels* regarding an expansion of *Robinson*. *Daniels* does not impose any "some degree of certainty" test on the quantum or caliber of evidence concerning the effect of chemicals found in the victim. The test used in *Robinson* is the correct one; there must be competent evidence of the effect asserted to have resulted from the chemicals found. Although the State contends that the medical examiner was not qualified to render an opinion on the subject, the court excluded the evidence based on relevancy, not the witness's qualifications, and it appears that the witness was qualified. See *Williams v. State*, 279 Ga. 731, 732 (2) (620 SE2d 816) (2005).

the victim's potential behavior. As that connection is relevant to the issue of provocation, the evidence should have been admitted.

However, although this evidence should have been admitted, the trial court's failure to do so was not harmful. The jury was instructed on voluntary manslaughter, which is committed when one

> causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). According to McWilliams's testimony at trial, when he arrived at his home, he found that the victim had been drinking liquor. He inquired where she got the alcohol and discussed with her the fact that she was not to mix alcohol with the medication she had gotten in "rehab." Thus, there was evidence placed before the jury that was essentially cumulative of the proffered testimony. See *Marshall v. State*, 275 Ga. 740, 743 (5) (571 SE2d 761) (2002).

McWilliams also testified that prior to returning home the night of the killing, he stopped at a police station to find out if he could have the victim removed from the home, and was told he could not. He further testified that at his home the victim was verbally and physically aggressive toward him, and in the course of the confrontation, he choked her. McWilliams admitted that he continued to choke her after she fell to the floor, unconscious, but he did not testify to striking the victim; physical evidence showed that she suffered a black eye before her death. McWilliams attempted to hide the crime, both by disposing of the body and lying to investigating police officers.

Considering the evidence presented, and the evidence excluded, it is highly probable that the court's error in excluding the proffered evidence did not contribute to the verdict, and thus the error was harmless. See *Jones v. State*, 272 Ga. 154, 157 (4) (527 SE2d 543) (2000); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 6, 2006.

*Randolph Frails*, for appellant.

Daniel J. Craig, District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General, for appellee.