A04A1630. MADDOX v. THE STATE.
(612 SE2d 484)

SMITH, Presiding Judge.
After a fire destroyed her family's residence, Donna Marie Maddox was found guilty of arson in the first degree and two counts of insurance fraud. Following the denial of her motion for new trial as amended, Maddox filed this appeal. Maddox contends that the trial court erred by rejecting her ineffective assistance claim, denying her motion to suppress, giving a jury charge on deliberate indifference, and violating her right to a thorough cross-examination of a witness. Having found no reversible error, we affirm.

On appeal, the evidence must be considered in a light most favorable to the verdict, and Maddox no longer enjoys the presumption of innocence. *Lawrence v. State*, 238 Ga. App. 102 (517 SE2d 822)

---

[1] *Seay v. Gables Residential Svcs.*, 263 Ga. App. 495, 496 (588 SE2d 264) (2003).
[2] *Harden v. Young*, 268 Ga. App. 619, 620 (606 SE2d 6) (2004).

(1999). So considered, the evidence shows that on February 17, 2001, the duplex where Maddox was living with her family was intentionally set ablaze. At the time of the fire, Maddox and her family were facing imminent eviction as a result of foreclosure. Before the night of the fire, Maddox and her son, 18-year-old David Maddox, had discussed burning the house down. Shortly before the fire, David rented a storage unit where he and his girlfriend moved boxes and other items. David also rented a motel room where he took the family pets. When the fire began, Maddox was at work at Waffle House. After the fire, Maddox, her two sons, and her daughter moved into the motel room obtained by David.

Investigator J. B. Darst of the Gwinnett County Fire Department's Arson Unit determined that the fire had been intentionally set using kerosene. Investigators shoveled debris through wire mesh strainers and sifted through the debris room by room, recording everything found in each room. Through this laborious process, investigators ascertained that many of the items reportedly lost in the fire and listed on the insurance claim were not in the debris and had not been on the premises at the time of the fire.

Based on physical findings at the fire scene and interviews of witnesses, search warrants were obtained for the storage unit and the motel room. Inside the storage unit, officers found personal, sentimental items belonging to Maddox and property claimed as lost on insurance forms. At the motel room, officers seized several items that appeared on the insurance claim. Investigators also learned that a few weeks before the fire, Maddox pawned a pair of diamond earrings and a Sony DVD player, items that she reported on the insurance claim as lost in the fire.

Maddox moved to suppress all evidence obtained from both searches. Determining that the search warrant for the storage unit was impermissibly vague and overbroad, the trial court suppressed the evidence obtained from that search. The court refused to suppress the evidence discovered in the motel room.

David entered into a negotiated guilty plea to arson in the first degree. Part of his plea deal required David to testify at his mother's trial. The arson count charged Maddox with unlawfully and knowingly "advis[ing] and encourag[ing]" David "to damage by means of fire the building of another" and did not charge Maddox with setting the fire. Her defense strategy hinged on convincing the jury that David acted on his own initiative in moving items out, renting the storage unit and the motel room, and in burning down the house.

During Maddox's trial, David recanted nearly all of his testimony at the plea hearing. Repudiating his prior testimony, David claimed, "I was pretty much coerced" and "brainwashed" into lying. David admitted speaking with his mother about setting the fire but claimed

that he had done so in jest. Later, contradicting that testimony, David testified that his mother had tried to dissuade him and told him that he should not do it and warned him that he would be caught.

Gregory Curry, a teenager and family friend, testified that before the fire, he overheard Maddox and David talking "about burning the house down for insurance money." According to Curry, shortly before the fire, he helped David and his girlfriend box and move personal items to the storage unit, and he accompanied them to the motel where they took the family pets. Curry testified that he saw David carry kerosene into the house and waited in the car while David started the fire. Curry also testified that shortly after David started the fire, he overheard David tell his mother that "they couldn't use grease and that they had to use kerosene to start the fire" and that "[s]he just said that was okay." In addition, Investigator Darst testified that David's girlfriend "further substantiated the fact that there was preplanning." Evidence from Maddox's pawn shop transactions was also entered in evidence.

While on direct examination, Maddox was asked, "Can you explain, Donna, why items on that sheet weren't found in the house or why Investigator Darst didn't find some of those items?" In a convoluted and rambling response, Maddox testified, "As far as . . . I knew . . . everything was in the house as far as I know." After lamenting the burnt mess that remained, Maddox blurted out, "I went over there once because I couldn't stand it because, I mean, all I owned after that was a Waffle House uniform, what I was wearing at work." Then, when asked, "[w]ere there things in there, in the house, that were historic or very valuable to you?" Maddox responded by tearfully describing sentimental items belonging to her grandfather that had been stored in the attic. When her counsel followed up by asking, "Was all that lost?" Maddox answered, "Yes."

Because Maddox testified to losing everything but the clothes she was wearing at the time of the fire, the trial court determined that Maddox opened the door to the introduction of evidence showing that she had not lost everything in the fire. During the subsequent cross-examination, the State impeached Maddox by confronting her with property seized during the search of the storage unit which included items she had previously testified were lost in the fire.

1. Maddox contends that the trial court erred in finding that her counsel provided effective assistance at trial. She claims that her counsel failed to fully investigate her case and opened the door at trial to evidence that had been suppressed.

In reviewing a trial court's findings on an ineffectiveness claim, we will affirm those findings unless they are clearly erroneous. See *Johnson v. State*, 266 Ga. 380, 383 (467 SE2d 542) (1996). To prevail on an ineffective assistance of counsel claim, a defendant must show

not only that her counsel's performance was deficient but also that, but for the deficiency, the outcome of the trial would have been different. *Reddick v. State*, 264 Ga. App. 487, 497-498 (8) (591 SE2d 392) (2003). Failure to satisfy either requirement is fatal to an ineffectiveness claim. Id. at 498.

At the motion for new trial hearing, Maddox argued that her trial counsel had no reason to ask her whether everything was destroyed because her response "completely undercut" her defense, "made her appear to be a liar," and "allowed the jury to infer that she knew that the house was going to be burned."

Maddox's trial counsel explained that Maddox "had said all along that she had lost everything," so when he asked her about losing everything, "yes" was the answer that he wanted, expected, and received. He testified that it was his understanding that Maddox lost everything and that neither her children nor she moved her things. He recalled Maddox telling him about the box in the attic that contained personal effects belonging to her grandfather, and saying "that had been all lost in the fire." He described Maddox as seeming "very upset" at the loss of those items. Her trial counsel also testified that when he reviewed the inventory sheets and the photographs of the items found at the storage unit with Maddox, David, and David's girlfriend, David and his girlfriend did not disclose that there was anything in the unit belonging to Maddox. He added that Maddox never told him otherwise.

In faulting her trial counsel for questioning her about the losses, Maddox, in effect, blames her counsel for the discrepancy between what she told him about her losses and what investigators discovered during their search of the storage unit. Regardless of whether Maddox could establish her counsel's deficient performance, we find that Maddox failed to establish the requisite prejudice, i.e., that the outcome of her trial would probably have been different. See *Reddick*, supra.

As for Maddox's convictions for insurance fraud, those convictions did not depend upon the admission of evidence relating to the loss of sentimental, personal effects because Maddox did not submit an insurance claim for those losses. As to the arson count, the record contains overwhelming evidence to sustain that conviction. Curry testified that he overheard Maddox and David planning the fire "for insurance money," and that after the fire, he overheard David tell Maddox that he set the fire with kerosene instead of grease. Curry also recalled overhearing them talking about "making it look like a grease fire." And, despite his efforts to retract his prior statements, David testified at trial that "she didn't want me to do it, but if I had to do it . . . that she just didn't want to be there, she didn't want to be

a part of it." Accordingly, we cannot say that the trial court's finding on her ineffectiveness claim was clearly erroneous. See *Johnson*, supra, 266 Ga. at 383.

2. Maddox contends that the trial court erred in denying her motion to suppress because the evidence was obtained during the execution of an illegal general warrant. She argues that the warrant executed at the motel room was impermissibly vague because it authorized the seizure of "[a]ll items contained within [a specified room and motel] at the time of the fire on February 17, 2001, and which remain therein which is evidence of the crime of Insurance Fraud."

A search warrant that fails to state with sufficient specificity what items can be seized is a general warrant and violates the state and federal constitutions. *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992). "A lawful search is limited to that which is described in the warrant. The warrant shall particularly describe the things to be seized and the search must be limited to that matter described." (Citation and punctuation omitted.) *Watson v. State*, 235 Ga. App. 381, 386 (3) (a) (509 SE2d 87) (1998). The search warrant here included detailed information about the removal of the cats and a dog prior to the fire and testimony about the CDs, tapes, stereo equipment, and other electronics. In the warrant application, an investigator testified that those particular items "were witnessed being taken to [the specified motel and room number] [and] were noticeably absent from the fire scene." The investigator further testified that in a recorded statement to Nationwide Insurance, Maddox said that "there were no items removed from the house prior to the fire." Taken as a whole, the search warrant was sufficiently specific to authorize the limited search for the items seized during its execution. See generally *Mozier v. State*, 207 Ga. App. 264, 266-267 (427 SE2d 551) (1993). Maddox's motion to suppress was properly denied.

3. Maddox contends that the trial court denied her right to a thorough and sifting cross-examination by limiting the questioning about her recorded statement. Maddox asserts that pursuant to OCGA § 24-3-38, she had a right to have her entire recorded statement admitted in evidence.

Shortly after the fire, Maddox contacted Nationwide to report a fire caused by a possible lightning strike. Leah Cunningham, assigned to Nationwide's special investigative unit, interviewed Maddox and took her recorded statement. Nationwide provided inventory sheets so that Maddox could list the family's personal property lost in the fire. After the forms were completed, Maddox signed them,

returned them to Cunningham, and attested to their accuracy. Cunningham testified that Maddox participated in an "Examination Under Oath," during which Maddox swore to the authenticity of the contents inventory.

During cross-examination, Cunningham was asked about statements Maddox made about the claim. The State objected three times, arguing that Maddox was trying to testify through Cunningham and that her statements were self-serving. After initially overruling the objections, the trial court directed the defense to narrow the scope of questioning. Even so, the defense was allowed to elicit testimony that Maddox cooperated with Nationwide, provided specific information including names of witnesses and cell phone numbers, completed a nonwaiver agreement to permit an investigation of the fire scene, and executed a records release.

It is axiomatic that reversal requires a showing of both error and harm. See *Zinnamon v. State*, 261 Ga. App. 170, 174 (2) (b) (582 SE2d 146) (2003). Even assuming, without deciding, that the trial court somehow erred in limiting the cross-examination of this witness, Maddox failed to show harm from that ruling. In light of the overwhelming evidence of Maddox's guilt, any purported error in excluding the additional portions of the statement was harmless beyond a reasonable doubt. See *White v. State*, 258 Ga. App. 546, 548 (2) (574 SE2d 629) (2002).

4. Maddox contends that the trial court erred by instructing the jury on the principle of deliberate indifference because there was no evidence to support that charge. She also claims that the court erred by instructing the jury that the principle of deliberate indifference applied to all counts of the indictment.

"A deliberate [indifference] instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." (Citation and punctuation omitted.) *Perez-Castillo v. State*, 257 Ga. App. 633, 635 (572 SE2d 657) (2002). In the instruction at issue, the court charged:

> The element of knowledge or intent may be satisfied by inferences drawn from proof that a defendant deliberately closed her eyes to what would otherwise have been obvious to her. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

Although Maddox urges otherwise, the evidence supports this instruction.

(a) As for the arson count, David testified that "[s]he knew that I was going to do it." From that testimony and other evidence, the jury could have inferred that Maddox knew about David's plan to set fire to the house, that she encouraged him, and that at the same time she tried to insulate herself from prosecution by creating an alibi. See *Perez-Castillo*, supra.

(b) As for the counts of insurance fraud, even assuming that Maddox's children padded the insurance claim and falsely listed personal property that the family never owned, Maddox was the person who attested to the truthfulness of the claim. Maddox could have corrected the information on the claim but did not. When vouching for the veracity of the insurance claim, Maddox could not "deliberately close[ ] her eyes to what would otherwise have been obvious to her." Since the instruction was a correct statement of law and supported by evidence, no error was shown.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 10, 2005 —
RECONSIDERATION DENIED MARCH 24, 2005 — 

*Lenzer & Lenzer, Thomas P. Lenzer, Robert W. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Peter H. Boehm, Assistant District Attorney*, for appellee.

