## A08A0267. BROWN v. THE STATE.
(663 SE2d 749)

BERNES, Judge.

DNA evidence showed that the elderly female victim was attacked and raped by appellant Joseph T. Brown. A DeKalb County jury convicted Brown of rape, aggravated sexual battery, and battery, and the trial court denied his motion for new trial. On appeal, Brown claims that he was denied effective assistance from his trial counsel, who did not challenge the validity of the search warrant used to secure a sample of his DNA. Brown contends that his counsel should have challenged the affidavit supporting the search warrant because it allegedly contained unlawfully obtained information, false statements, and material omissions such that, when properly modified, the warrant failed to establish probable cause. We conclude that the trial court did not err in rejecting Brown's ineffective assistance claim and therefore affirm.

The record reflects that the victim was an 85-year-old female who lived alone in a private residence in DeKalb County. The victim had suffered a stroke and had problems with her eyesight and hearing. She relied upon her son, who lived next door, to assist her with such things as preparing meals.

In the early afternoon of April 26, 2006, a young male, later identified through DNA evidence as Brown, approached the victim's home and convinced her to let him come inside to use the restroom. After entering the home and using the restroom, Brown grabbed the victim, held her down, placed a pillow over her head, inserted his finger into her vagina, and raped her. After the attack, the victim's face, neck, breasts, and arms were extensively bruised, and she was bleeding from the vaginal area.

Immediately after the incident, the victim, partially clothed and bloody, ran next door to her son's home and told him that she had been raped. The victim's son called 911, and the police and emergency medical technicians responded. The victim subsequently was transported to the hospital.

At the hospital, a detective interviewed the victim. She told the detective that her assailant had been a white male, with reddish-blonde hair. However, the victim said that she had not seen the

assailant very well and did not believe that she would be able to identify him. While in the emergency room, a sexual assault kit also was performed on the victim. A physical examination by the emergency room physician further revealed significant vaginal tearing consistent with forced sexual contact.

While the victim was at the hospital, another detective conducted a crime scene investigation and interviewed several individuals, including "Joy," the girlfriend of the victim's son. According to the girlfriend, earlier that day she had given a ride to Brown, a black male. Around noon, she had dropped Brown off at an apartment complex two blocks from the victim's home. The girlfriend gave this information to the detective, who showed her a photograph of Brown for identification purposes. The girlfriend, who knew Brown well, confirmed that the man in the photo was him.

The detective also interviewed a neighbor who lived two houses away from the victim. The neighbor told the detective that around 12:45 p.m., he had observed a young black man who he had never seen before standing in the victim's driveway. The man then turned around, walked down the driveway, and went over to the house of the victim's son. Since the neighbor had seen the man from a distance of 150 feet and had not seen his face, the neighbor could not identify him.

Finally, the detective interviewed the victim's son. According to the son, around 1:00 p.m. that day he had returned from the store and saw a young black man who he had never seen before, 20 to 22 years in age, standing in his driveway. He later was shown a photo lineup and identified the man in his driveway as Brown. Brown asked for Joy and claimed that she had stolen money from him. Brown and the victim's son then began to argue, and the son told Brown to leave his property. Visibly angry, Brown walked out of the driveway and into the street, and the victim's son went into his house. The last time that the victim's son saw Brown, he was in the street "right in front of [the victim's] house." Twenty minutes later, the victim ran over to her son's home and told him that she had been raped.

The detectives subsequently obtained an arrest warrant for Brown. On the day of his arrest, the detectives went to speak with Brown at the jail. After being placed in an interview room and advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Brown stated that he wanted to speak with a lawyer. The detectives nevertheless continued the interview, which was videotaped. During the interview, Brown admitted that he had been inside the victim's home to use the restroom during the same time period that the rape occurred.

After interviewing Brown, the detectives submitted an affidavit and application for a search warrant to obtain swabs from Brown's mouth for DNA testing. The affidavit stated in relevant part:

On 4/26/2006 at ap[p]roxi[ma]tely 1300 hours, there was a reported rape at [the victim's home]. The victim a 85 year old white female let a male inside her residence to use the restroom. Once out of the restroom, the male attacked her, threw her on the bed and raped her causing him to have ca[r]nal knowledge with the victim. . . .

The investigation revealed that a black male named Joseph Tristan Brown was inside the residence at the time of the incident. The victim has seeing problems and could not pick a suspect out of a photo line-up, however, the suspect Mr. Brown admitted to using the restroom inside the victim's residence during the same time frame. The suspect denied raping the victim, however, two witnesses picked Mr. Brown out of a six picture photo line-up and advised that he was the only person at the scene during this [time] frame. . . .

The detectives did not provide any additional information to the magistrate through oral testimony.

The magistrate issued the search warrant, and the necessary swabs were taken from Brown's mouth. Subsequent DNA analysis revealed that the male DNA profile found in vaginal swabs taken from the victim as part of the sexual assault kit matched Brown's DNA profile. The statistical frequency of this DNA profile in the general population is 1 out of 140 quadrillion people.

Brown thereafter was indicted on one count of rape, two counts of aggravated sodomy, two counts of aggravated sexual battery, and one count of battery. In the ensuing proceedings, Brown was jointly represented by two experienced public defenders, who filed various motions on his behalf. Brown's counsel did not challenge the validity of the search warrant, but they did move to suppress the admission of the incriminatory statements Brown made to the detectives. Brown's trial counsel argued that the statements, which were elicited by the detectives after Brown asked for a lawyer, were inadmissible under *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).[1] The trial court agreed and suppressed the statements.

---

[1] Under *Edwards*, 451 U. S. 477, a suspect who requests counsel after being informed of his *Miranda* rights

A jury trial followed in which the jury convicted Brown of rape, one count of aggravated sexual battery, and battery. He was acquitted on the remaining counts. After retaining new counsel, Brown filed his motion for new trial contending that he received ineffective assistance from his trial counsel, and the trial court denied the motion.

On appeal, Brown argues that his trial counsel was ineffective in failing to challenge the validity of the search warrant used to secure the swabs from his mouth, which he claims was issued based on an affidavit that included unlawfully obtained information, false statements, and material omissions. According to Brown, if the false and unlawfully obtained information is deleted, and the omitted truthful material included, it results in an affidavit lacking probable cause. Brown thus contends that if his trial counsel had challenged the affidavit, the search warrant would have been found invalid, and the DNA evidence predicated on the swabs from his mouth would have been suppressed at trial. Consequently, Brown argues that the trial court erred in determining that he received effective assistance from his trial counsel.

We will not reverse a trial court's determination that a defendant received effective assistance from trial counsel unless clearly erroneous. *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).

> The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation omitted.) *Jones v. State*, 289 Ga. App. 219, 222 (2) (656 SE2d 556) (2008). "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. [Cit.]" *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003).

---

may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the [s]tate's case-in-chief.

(Footnotes omitted.) *Taylor v. State*, 274 Ga. 269, 271-272 (1) (553 SE2d 598) (2001).

Guided by these principles, we turn to Brown's specific contentions concerning the affidavit supporting the search warrant.

1. Brown contends that the affidavit improperly included his incriminatory statement made to the detectives that he had been in the victim's home during the time frame that the rape occurred. Brown argues that because the statement was unlawfully obtained in violation of *Miranda*, 384 U. S. 436, and *Edwards*, 451 U. S. 477, it could not be used and relied upon by the state to procure a search warrant to secure swabs from his mouth.

The Supreme Court of Georgia has held that the "fruit" of a voluntary statement obtained in violation of *Miranda* and *Edwards* is not subject to the exclusionary rule. See *State v. Woods*, 280 Ga. 758, 759 (632 SE2d 654) (2006); *Taylor v. State*, 274 Ga. 269, 276 (4) (553 SE2d 598) (2001); *Wilson v. Zant*, 249 Ga. 373, 378-379 (1) (290 SE2d 442) (1982), overruled on other grounds, *Morgan v. State*, 267 Ga. 203, 204-205 (2) (476 SE2d 747) (1996). See also *United States v. Patane*, 542 U. S. 630 (124 SC 2620, 159 LE2d 667) (2004).[2] The rules enunciated in *Miranda* and *Edwards* help protect an accused from being compelled to testify against himself at trial in violation of the Fifth Amendment to the United States Constitution. See *Patane*, 542 U. S. at 636 (I); *Wilson*, 249 Ga. at 378 (1). As such, the exclusion from trial of a voluntary statement taken in violation of these Fifth Amendment prophylactic rules "is a complete and sufficient remedy." (Citation, punctuation and footnote omitted.) *Patane*, 542 U. S. at 641-642 (III), 643 (IV).[3]

We applied the same principles in *Casey v. State*, 246 Ga. App. 786, 791 (4) (542 SE2d 531) (2000). In that case, the defendant argued

---

[2] In *Patane*, a plurality of three justices of the United States Supreme Court held that a violation of *Miranda* does not require the suppression of physical evidence that was the fruit of the suspect's voluntary statements. See *Patane*, 542 U. S. at 633-634. Two other justices agreed with that ruling, but concluded that it was unnecessary to determine whether the police had in fact violated *Miranda* under the circumstances of the case. See id. at 644-645 (Kennedy and O'Connor, JJ., concurring in the judgment).

[3] Brown also argues that he was arrested in violation of the Fourth Amendment because the warrant for his arrest allegedly was invalid for lack of probable cause, and that, as a result, the incriminatory statement obtained from him following his arrest should have been excluded from the search warrant affidavit as fruit of a Fourth Amendment violation. We do not reach this argument because Brown never raised it in the court below. See *Allen v. State*, 273 Ga. App. 227, 230 (2) (614 SE2d 857) (2005) (the defendant cannot raise issues on appeal that were neither raised nor ruled upon by the trial court); *Pate v. State*, 269 Ga. App. 684, 686-687 (1) (605 SE2d 90) (2004) ("It is well settled that the arguments underlying a claim for ineffective assistance of counsel must be raised before appeal at the first opportunity, usually on motion for new trial, and the failure to seize that opportunity is a procedural bar to raising that issue at a later time.") (punctuation and footnote omitted).

> that the search warrant was not based upon independent probable cause but was based upon his statements obtained in violation of *Miranda*. He contend[ed] that therefore the items of evidence retrieved from the search were obtained as a result of his statements and were "fruits of the poisonous tree," which should have been suppressed.

Id. Concluding that the search warrant could be predicated on the defendant's voluntary but unlawfully obtained statements, we affirmed the trial court's decision to admit the evidence seized during the search. Id.

Based on *Casey* and the other case law cited above, we conclude that although Brown's voluntary statement to the detectives was elicited in violation of *Miranda* and *Edwards*,[4] the statement could be relied upon by the state in the supporting affidavit in order to obtain the search warrant for the swabs of Brown's mouth. Accordingly, the trial court did not err in concluding that Brown's trial counsel was not ineffective for failing to object to the search warrant affidavit on this ground.

2. Brown next contends that the affidavit to the search warrant improperly omitted the fact that the victim had stated to the detective that her assailant was a white male with reddish-blonde hair. He also argues that the affidavit falsely stated that two witnesses had picked Brown out of a photographic lineup and had advised the detectives that Brown was the only person at the scene at the time the rape had occurred.[5] Brown maintains that if these errors had been corrected, the resulting affidavit would have been insufficient to support the magistrate's finding of probable cause for the issuance of the search warrant.

In deciding whether probable cause exists to support the issuance of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citation and punctuation omitted.) *State v. Davis*, 288 Ga. App. 164, 165 (653 SE2d 311) (2007).

> Ultimately, this Court's role on review is to determine if the magistrate had a substantial basis for concluding that

---

[4] Brown does not challenge the trial court's conclusion that his statement to the detectives was made voluntarily.

[5] Additionally, Brown contends that the affidavit did not disclose that one of the witnesses referenced therein had a criminal record. But, his contention fails because he never presented any competent evidence that the witness had such a record.

probable cause existed to issue the search warrant. Moreover, as the reviewing court, we must give substantial deference to the magistrate's decision to issue a search warrant after finding probable cause. In addition, if a court determines that an affidavit contains material false representations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant.

(Punctuation and footnotes omitted.) *Moss v. State*, 275 Ga. 96, 102-103 (13) (561 SE2d 382) (2002).

Without a doubt, the detectives should have included in the search warrant affidavit, or orally informed the magistrate, that the victim had told them that her assailant was a white male with reddish-blonde hair. Their failure to do so was inexcusable. Furthermore, the affidavit is also incorrect in asserting that two witnesses identified Brown in a photographic lineup and advised the detectives that Brown was the only person at the scene at the time of the rape. Rather, only one witness — the victim's son — identified Brown in a six-person photographic lineup, and he more narrowly advised the detectives that he saw Brown in front of the victim's home minutes before the rape.[6]

Nevertheless, we conclude that even if the affidavit were corrected to include the material omission and to correct the misstatement, probable cause to issue the search warrant would continue to exist. As noted in Division 1, the state was permitted to rely upon and include in the affidavit Brown's damaging admission that he was in the victim's home in the time frame that the rape occurred. The correct affidavit, moreover, would include the fact that Brown was identified in a photographic lineup by a witness that saw him standing in front of the victim's home within minutes of the rape. Similarly, it would still include the facts that the victim was elderly and had "seeing problems," thereby providing a basis for why her description of her assailant might be incorrect.[7] "By no means is probable cause to be equated with proof by even so much as a

---

[6] Joy, the girlfriend of the victim's son, knew Brown personally and identified him from a single photograph shown to her by the detective. In turn, the victim's neighbor told the detective that he saw a black man standing in the driveway of the victim's home, but he did not see the man's face and thus could not identify him. Additionally, neither Joy nor the neighbor saw Brown "at the scene at the time of the rape."

[7] In a pretrial deposition taken to preserve her testimony in the event she was held incompetent to testify at trial, the victim repeatedly testified that she was confused and stated that her "vision is terrible." She further insisted that she had been raped by an 80-year-old white man. During her direct examination at trial, the victim again stated that she was confused. She testified at one point that she was raped by a woman, but later testified that "*he*

preponderance of evidence. . . . [P]robable cause does not demand the certainty we associate with formal trials.'' (Citation and punctuation omitted.) *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984). Taking a common sense approach to evaluating the affidavit, we conclude that even if the omitted information is included and the misstatement corrected, there still is sufficient evidence to find probable cause for issuance of the search warrant. See generally *Carter v. State*, 283 Ga. 76, 77-78 (2) (656 SE2d 524) (2008); *Gremillion v. State*, 233 Ga. App. 393, 395 (1) (504 SE2d 265) (1998); *Kessler v. State*, 221 Ga. App. 368, 371 (471 SE2d 313) (1996).

Thus, we conclude that Brown has failed to show that his trial counsel was ineffective for failing to challenge the affidavit supporting the search warrant. Accordingly, the trial court did not err in determining that Brown failed to prove that he received ineffective assistance from his trial counsel. In so holding, we by no means condone the failures of the detectives in this case.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 5, 2008 —
RECONSIDERATION DENIED JUNE 26, 2008.

*James D. Michael*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.

---

raped me.'' (Emphasis supplied.) On cross-examination, as a result of her poor eyesight and hearing problems, the victim had to be told by defense counsel that ''someone other than [the prosecutor]'' was now questioning her.