## S07A1826. REAVES v. THE STATE.
### (664 SE2d 211)

CARLEY, Justice.

Rodney Michael Reaves was indicted for the murder of his 11-year-old daughter and for related crimes, and the State gave notice of its intent to seek the death penalty. This Court granted interim review and directed the parties to address the following three questions: (1) whether the trial court erred in denying a motion to suppress Reaves' statements; (2) whether the trial court erred in denying a motion to suppress evidence seized with warrants; and (3) whether the trial court erred in refusing Reaves' request to have a video recording of his custodial statements examined by the FBI. Reaves' wife was also charged with murder and related offenses, and interim review was granted in her case, which is decided today in *Reaves v. State*, 284 Ga. 236 (664 SE2d 207) (2008).

1. On the morning of December 1, 2003, Reaves called 911 and led law enforcement officers to his daughter's bedroom, where she lay dead, having sustained numerous injuries. After an apparently consensual initial interaction, Reaves at some point gave officers a physical demonstration of his version of the events leading up to the child's death. One to two hours subsequent to the officers' arrival, Reaves was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), waived those rights, and gave

a second demonstration which was videotaped. He was then informed that he was under arrest. Thereafter, the officers transported Reaves to the police station and made another video recording, which shows a second reading and waiver of his *Miranda* rights, followed by a lengthy police interrogation.

In its order on the motion to suppress Reaves' pre-trial statements, the trial court found simply that Reaves "was advised of each of his *Miranda* rights, that he understood them, that he voluntarily waived them, and that he thereafter gave his statements freely and voluntarily without any hope of benefit or fear of injury." " " " 'Factual and credibility determinations made by a trial judge after a suppression hearing are accepted by appellate courts unless clearly erroneous. (Cit.)' (Cit.)" ' [Cit.]" *Baldwin v. State*, 263 Ga. 524, 525 (1) (435 SE2d 926) (1993). The trial court's findings of fact are supported by uncontradicted evidence in the record to the extent that they pertain to the first *Miranda* waiver and subsequent physical demonstration, as well as the second *Miranda* waiver and subsequent lengthy interrogation. However, the findings of the trial court are clearly erroneous with respect to statements which Reaves made at his home prior to any *Miranda* warning.

The admissibility of those pre-*Miranda* statements depends upon whether " 'a reasonable person in the place of the defendant would feel so restrained as to equate to a formal arrest. (Cits.)' [Cit.]" *Quedens v. State*, 280 Ga. 355, 358 (2) (629 SE2d 197) (2006). However, the trial court has not yet made the findings of fact necessary to decide this question, including, but not limited to, whether Reaves was ordered to sit, and whether and when he was forbidden to use his cellular telephone. Therefore, we remand the case for the findings of fact which are necessary to determine whether Reaves was in custody prior to his first *Miranda* warning. See *Hicks v. State*, 255 Ga. 503, 504 (1) (340 SE2d 604) (1986); *Livingston v. State*, 267 Ga. App. 875, 877 (2) (600 SE2d 817) (2004).

On remand, the trial court should note that, contrary to Reaves' argument, whether officers focused their "unarticulated suspicions" on him and whether they secretly possessed probable cause to arrest him are irrelevant to the question of whether he was in custody. *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). If on remand any of Reaves' statements prior to his *Miranda* warnings are deemed inadmissible, the trial court should also consider whether those statements which were preceded by *Miranda* warnings and waivers are nevertheless also inadmissible. *State v. Pye*, 282 Ga. 796, 799-800 (653 SE2d 450) (2007).

2. (a) Prior to the issuance of any warrant, the police officers seized a blood sample, which the uncontradicted testimony shows was discovered on the floor of Reaves' garage when the officers

entered it pursuant to his consent. As for the remaining physical evidence, the State argues that no warrants were necessary, because the officers were lawfully present at a known crime scene and, therefore, were entitled to conduct a warrantless search of the premises. When police officers have lawfully entered a crime scene, they may take actions justified by exigent circumstances, such as a search to find other victims or perpetrators or to secure evidence that is subject to imminent destruction, and they may seize any evidence which is in plain view during the course of their legitimate emergency activities. *Mincey v. Arizona*, 437 U. S. 385, 392-394 (I) (98 SC 2408, 57 LE2d 290) (1978); *Lawler v. State*, 276 Ga. 229, 233 (4) (b) (576 SE2d 841) (2003). However, law enforcement officers may not conduct any other warrantless search of a known crime scene simply because they are lawfully present and "a homicide recently occurred there, as there is no 'murder scene exception' to the warrant requirement. [Cit.]" *Teal v. State*, 282 Ga. 319, 322 (2) (647 SE2d 15) (2007). See also *Mincey v. Arizona*, supra at 393-395 (I).

(b) Reaves contends that the search warrants for his home were invalid because the police officers used the statements he made prior to any *Miranda* warnings to show probable cause. However, Reaves does not argue that his pre-*Miranda* statements were involuntary. The Supreme Court of the United States has held that physical evidence obtained as the fruit of a statement made without the required *Miranda* warnings should not be suppressed so long as the statement was voluntary. *United States v. Patane*, 542 U. S. 630 (124 SC 2620, 159 LE2d 667) (2004) (plurality opinion with concurrence). It follows that physical evidence seized pursuant to a warrant obtained with a voluntary statement taken in violation of *Miranda* is also admissible. *United States v. Phillips*, 468 F3d 1264, 1266 (10th Cir. 2006); *Brown v. State*, 292 Ga. App. 269, 273 (1) (663 SE2d 749) (2008).

(c) Reaves further contends that the search warrants were tainted by an earlier, warrantless search of his home that extended beyond the garage. A finding by the trial court as to whether such a warrantless search actually occurred is not necessary to determine whether the warrants were valid. A review of the record shows that, other than the evidence which was discovered by the officers when they entered the garage with Reaves' consent, no information obtained during a warrantless search was used to obtain the warrants. Moreover, the evidence presented to the magistrate was sufficient to show probable cause to support the search warrants. Whether other, illegal searches occurred "is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant[s] under which that evidence was seized."

*Segura v. United States*, 468 U. S. 796, 813-814 (V) (104 SC 3380, 82 LE2d 599) (1984). See also *State v. Lejeune*, 277 Ga. 749, 754-755 (3) (A) (594 SE2d 637) (2004). Accordingly, we conclude that the warrants were not invalid because of any warrantless search that might have previously occurred.

(d) Reaves urges that the search warrants in this case violated the requirement of the Fourth Amendment to the United States Constitution that "no Warrants shall issue . . . [without] particularly describing . . . the . . . things to be seized." Although a warrant "cannot leave the determination of what articles fall within [its] description and are to be seized entirely to the judgment and opinion of the officer executing the warrant[,]" the degree of specificity in the description "is flexible and will vary with the circumstances involved." *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992). "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." *United States v. Ventresca*, 380 U. S. 102, 108 (I) (85 SC 741, 13 LE2d 684) (1965).

The record in this case contains three search warrants for Reaves' home and one for an automobile. The first warrant for the house authorized the seizure of

> [b]lunt objects, speaker wire, blood, hair, fibers, fingerprints, bodily fluids, papers and notes, and any other item of evidence pertaining to possible child abuse or neglect or any other item(s) that tend to lead to probable cause that a crime has been committed. Which is . . . Cruelty to Children[.]

The second search warrant for the house specified

> speaker wire, wooden paddle, chain encased in plastic (protective covered bicycle lock), notes and papers, scissors and any other item of evidentiary value tending to lead to probable cause that a crime has been committed. Which is . . . Murder . . . ; Cruelty to Children[.]

The third warrant for the house authorized the seizure of a

> Personal Home computer, school agenda, diary, rubber-maid type tub with personal items of [the victim], as well as notes and papers and any other evidence that would tend to lead to probable cause that a crime has been committed: to wit: Murder . . . and Cruelty to Children . . . .

The warrant for the automobile specified a

> wooden paddle, chain encased in plastic (protective covered bicycle lock), padlocks, as well as notes, papers, clothing, hair, fibers and any other trace evidence that would tend to lead to probable cause that were used in [the] crime of Murder . . . and Cruelty to Children . . . .

We do not view the slight differences in the terminology of the residual clauses in the warrants as constitutionally significant. There is a split of authority regarding the validity of such clauses. See 2 LaFave, *Search and Seizure* § 4.6 (d), fn. 105 (4th ed. 2004). However, this Court has previously approved the use of such clauses, holding that a warrant's authorization to search for specified items of potential evidence, as well as for "other related items to the crime of murder" or for "any other fruits of the crime of murder," is sufficiently particular and does not authorize a general search in violation of the Fourth Amendment. *Lawler v. State*, supra at 233 (4) (c); *Lance v. State*, 275 Ga. 11, 21 (19) (b) (560 SE2d 663) (2002). See also *Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (search warrant's general description of evidence of " 'child molestation and sexual exploitation of children in violation of OCGA § 16-12-100.2' was sufficient"); *Maddox v. State*, 272 Ga. App. 440, 444 (2) (612 SE2d 484) (2005) (taken as a whole, search warrant was sufficiently specific where it authorized the seizure of all items contained within a specified motel room "which is evidence of the crime of Insurance Fraud").

The residual clauses in the search warrants at issue in this case limit the items which may be seized to evidence of cruelty to children and, in all but one warrant, murder. It has been argued that such a limitation fails to provide the requisite particularity. In *Andresen v. Maryland*, 427 U. S. 463, 481-482 (III) (96 SC 2737, 49 LE2d 627) (1976), however, "[t]he United States Supreme Court previously considered and rejected a similar argument." *State v. Lavers*, 814 P2d 333, 341 (Ariz. 1991) (In Banc). As in *Andresen*, " '(t)he warrants . . . did not authorize the executing officers to conduct a search for evidence of other crimes but only to search for and seize evidence relevant to the crime (identified in the warrant).' [Cit.]" *State v. Lavers*, supra (where warrant permitted the seizure of "any and all evidence relating to" the victim's murder). See also *United States v. Mayhew*, 337 FSupp.2d 1048, 1056-1057 (III) (A), fn. 3 (S.D. Ohio 2004) (where warrant authorized a search for "other fruits, instrumentalities and evidence of the crime of Aggravated Murder"); *State v. Reid*, 687 P2d 861, 867 (Wash. App. 1984) (where "[t]he phrase 'any other evidence of the homicide' specifically limited the

warrant to the crime under investigation"). The warrants here must be "understood as limiting the search to items (in addition to the items specifically mentioned in the warrant) reasonably appearing to be connected to the specific crime[s] delineated in the warrant[s]." *Lance v. State*, supra.

> The warrant[s] in the instant case [were] limited to evidence of [cruelty to] children [and murder]. The exact characteristics of the evidence were unknown to investigators. However, requiring a more detailed description would unreasonably thwart an investigation. The warrant did not authorize a search for evidence of other crimes and its scope was properly limited. Therefore, it was not fatally general . . . .

*State v. Fletcher*, 609 SE2d 572, 589 (II) (B) (S.C. App. 2005).

*Andresen* cannot be distinguished on the basis that the concluding provisions here were not preceded by an exhaustive list of specific items that might serve to limit the residual phrase. This distinction should be rejected

> for two reasons. First, . . . the warrant in *Andresen* contained an exhaustive list because "(u)nder investigation was a complex real estate scheme whose existence could be proved only by piecing together many bits of evidence." [Cit.] Because no such complex crime is at issue in this case, there was no reason for an "exhaustive list." Second, this [C]ourt has approved the use of similar clauses in [*Lawler* and *Lance*,] two cases in which there were no "exhaustive lists" of items to be seized.

*State v. Lavers*, supra at 341, fn. 2. Thus, "*Andresen* establishes the principle that a warrant's catch-all phrase must be read in light of the items that precede it, a principle further supported by the canon of construction known as *ejusdem generis* . . . . [Cit.]" *United States v. Pindell*, 336 F3d 1049, 1053 (II) (D.C. Cir. 2003). As in *Andresen*, the residual clauses here not only "specifically limited [each] warrant to the crime under investigation[,]" they also appeared in each warrant not as a separate sentence, but rather at the end of a list of specific items which "also provided guidelines for the officers conducting the search. Therefore, these limitations were adequate to prevent a general exploratory search. [Cit.]" *State v. Reid*, supra. See also *United States v. Pindell*, supra.

We recognize that a search warrant for "evidence of crime" is so " 'open-ended' in its description that it [can] 'only be described as a general warrant.' " *Groh v. Ramirez*, 540 U. S. 551, 563 (II) (124 SC

1284, 157 LE2d 1068) (2004) (quoting *United States v. Stefonek*, 179 F3d 1030, 1032-1033 (7th Cir. 1999)). However, that analysis is entirely consistent, not only with the analysis of this opinion, but also with this Court's previous understanding of federal precedent, as expressed in *Lance*:

> *United States v. Buck*, 813 F2d 588, 591 (II) (2d Cir. 1987) (noting that " 'boilerplate' language in a warrant" is more likely to be found permissible when "it was preceded by a list of specific items to be sought"); . . . *United States v. George*, 975 F2d 72, 75-77 (I) (A) (2d Cir. 1992) ("(A)uthorization to search for 'evidence of *a* crime,' that is to say, any crime, is so broad as to constitute a general warrant."); *United States v. Maxwell*, . . . 920 F2d 1028, 1033-1034 (II) (A) (D.C. Cir. 1990) (holding that reference in a search warrant to certain crimes might be sufficiently narrowing but that reference to other crimes might leave the scope of the authorized search too broad). (Emphasis in original.)

*Lance v. State*, supra at 21-22 (19) (b).

Although *Marron v. United States*, 275 U. S. 192, 196 (1) (48 SC 74, 72 LE 231) (1927) states that "nothing is left to the discretion of the officer executing the warrant[,]" "the particularity requirement only demands that the executing officer be able to identify the property sought with reasonable certainty, [cits.] . . . ." William E. Ringel, *Searches and Seizures, Arrests and Confessions* § 5:12. See also *Bishop v. State*, 271 Ga. 291, 294 (6) (519 SE2d 206) (1999); John M. Burkoff, *Search Warrant Law Deskbook* § 9:5.

> We do not believe that it was the intention of the Supreme Court of the United States . . . to lay down [a] rule . . . that the searching and seizing officer be left no room to make a judgment as to what particular documents or things are subject to seizure under the warrant which he is executing. It is difficult to imagine that a case could arise where an officer executing a valid search warrant would not at some stage in the matter be required in the very nature of things to exercise his judgment as to what thing or things or person or persons were to be seized under the warrant. . . . [W]e conclude that so long as the determination which he is required to make is a determination of a matter of fact as distinguished from a determination of a matter of opinion the warrant is valid.

*Strauss v. Stynchcombe*, 224 Ga. 859, 866 (2) (165 SE2d 302) (1968)

(quoted in 2 LaFave, *supra* at § 4.6 (a), fn. 12). As discussed above, "[t]he warrant[s] here sufficiently limited the searching officers' discretion." *State v. Reid, supra.*

For similar reasons, the authorization in each warrant to seize unspecified "notes" and "papers" does not lack sufficient detail to satisfy the particularity requirement of the Fourth Amendment.

> "There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant." [Cit.]

*Andresen v. Maryland, supra* at 474 (II). "[T]he phrases in a search warrant must be read in context and not in isolation. [Cit.]" *United States v. Conley*, 4 F3d 1200, 1208 (III) (B) (3rd Cir. 1993).

Read in a common-sense fashion and in the context of the preceding list of items and the residual clause, each warrant's description of "notes" and "papers" was implicitly limited to those which were related to cruelty to children and murder. See *United States v. Conley, supra; State v. Fitanides*, 552 A2d 1379, 1381 (N.H. 1988). The warrants here did not encompass notes and papers which were unlikely "to provide evidence of criminal activity. . . . The warrants, which clearly identify the alleged offenses that were the object of the investigation, provided sufficient guidance to the executing officers as to what items to seize." *United States v. Dethlefs*, 883 FSupp. 766, 769-770 (I) (A) (D. Me. 1995).

> "[I]n searches for papers, it is certain that some innocuous documents will be at least cursorily perused in order to determine whether they are among those papers to be seized. But no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." [Cit.]

*United States v. Conley, supra.* Therefore, the warrants have "sufficient specificity, satisfying the particularity requirement of the Fourth Amendment." *United States v. Conley, supra.* See also *Holden v. State*, 202 Ga. App. 558, 560-561 (2) (a) (414 SE2d 910) (1992) (holding that a warrant's description of "any and all records, papers, writings, or receipts concerning the care or control of children" " 'was sufficient to enable the searching officer to seize the described items with "reasonable certainty." ' [Cit.]").

Accordingly, the trial court did not err in denying the motion to suppress evidence seized with warrants.

3. The videotape of the interrogation of Reaves at the police station has an obvious gap between a pause in the interrogation and additional questioning by an officer speaking in mid-sentence. At the hearing on the motions to suppress, the Senior Assistant District Attorney stated that he had made arrangements for the FBI to examine the videotape in the event that Reaves obtained examination of it by a defense expert. At that point, Reaves' attorney expressed the desire for the FBI to examine the recording and stated that a request for examination by a defense expert would be made only if the FBI's determination was inconclusive. The District Attorney then clarified that the State was not offering to send the videotape to the FBI and would not waste that agency's time in the absence of any showing that the FBI would be able to determine anything other than whether the recording was turned off. The District Attorney subsequently agreed that, after such a showing, if the trial court decided that the videotape ought to be reviewed by an expert, the State would agree to send it to the FBI.

Thereafter, Lieutenant Kenneth Turner testified that, while being questioned, Reaves showed emotion and anger, which must have occurred during the gap, and that Turner never threatened Reaves. None of the officers who testified could explain how the gap in the video recording had occurred. Just before a continuation of the hearing, the trial court ruled as follows: "All right, at this point in time I've heard no evidence to cause me to send the tape to be tested."

When the hearing resumed a few weeks later, a local media expert testified that the recording could have been simply stopped and restarted or, consistent with the defense theory, that it could have been stopped, rewound, and then restarted. He did not testify whether it was possible for anyone to determine that the tape had been rewound prior to being restarted. During the same hearing, Reaves testified that Turner accused him of lying and threatened to have him thrown down the stairs and later assaulted in jail. The video recording did not contain evidence of any such threats. The trial court never made a final decision as to whether the videotape should be examined by another expert, but rather simply denied the motions to suppress.

A defendant does not have the right to request, and the trial court does not have the power to order, a government crime lab to conduct tests for a defendant's benefit. *Kendrix v. State*, 206 Ga. App. 627, 628 (2) (426 SE2d 251) (1992). In this case, however, the record reveals that the FBI had agreed to examine the videotape. Therefore, the only question here is whether the trial court erred by refusing to order that the evidence be provided to that agency. Although the District Attorney mentioned the use of public funds,

the record indicates that such expenditure was not at issue. Thus, the standard governing the provision of funds to hire an independent expert does not apply. See *Lance v. State*, supra at 14 (2).

However, even though the use of public funds is not in issue, a criminal defendant is still not entitled to have an expert examine evidence such as a tape recording unless it constitutes " 'critical evidence whose nature is subject to varying expert opinion.' [Cit.]" *Carpenter v. State*, 252 Ga. 79, 80 (1) (310 SE2d 912) (1984). See also *Sabel v. State*, 248 Ga. 10, 16 (6) (282 SE2d 61) (1981), overruled on other grounds by *Rower v. State*, 264 Ga. 323, 325 (5) (443 SE2d 839) (1994). The defendant must show both that the evidence is "subject to varying interpretations" and, " 'when developed by skilled counsel and experts, could induce a reasonable doubt in the minds of enough jurors to avoid a conviction.' [Cit.]" *Carpenter v. State*, supra. See also *Reinhardt v. State*, 197 Ga. App. 825, 826 (1) (399 SE2d 729) (1990). After hearing all of the evidence, the trial court failed to find whether Reaves had made this required showing. Therefore, we remand the case for the trial court to make those findings of fact which are necessary for it to determine whether to permit further expert examination of the videotape. See *Hicks v. State*, supra; *Livingston v. State*, supra.

Accordingly, the judgment of the trial court is affirmed as to its denial of the motion to suppress evidence seized with warrants, but it is reversed and the case remanded with respect to both the denial of the motion to suppress Reaves' statements and his request to have the FBI examine the videotape of the custodial statements which he made at the police station.

*Judgment affirmed in part and reversed in part and case remanded with direction. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Melton, J., who concur in part and dissent in part.*

SEARS, Chief Justice, concurring in part and dissenting in part.

The majority holds that the authorization to search for and seize "notes" and "papers" and "evidence" of the crimes of murder and cruelty to children did not amount to an unconstitutional general warrant under the particular facts of this case.[1] I concur with the result reached by the majority as to "evidence" of the crimes of murder and cruelty to children. I dissent as to "notes" and "papers." On all other issues, I concur with the majority.

---

[1] U. S. Const. Amend. IV ("[N]o Warrants shall issue . . . [without] particularly describing the place to be searched, and the persons or things to be seized.").

1. As the majority correctly describes, each of the warrants in this case contained an authorization to search for and seize "evidence" of the crimes of murder, cruelty to children, or both. The majority stresses that the "list of specific items" preceding the general phrase regarding "evidence" of the specified crimes " 'provided guidelines for the officers conducting the search.' "[2] The majority reasons that, under " 'the canon of construction known as *ejusdem generis,*' "[3] the general phrase would take on a meaning that is sufficiently limited to satisfy the particularity requirement of the Fourth Amendment. Black's Law Dictionary defines ejusdem generis as follows:

> A canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed.[4]

Thus, the majority interprets the phrase regarding "evidence" of the crimes of cruelty to children and murder as being limited to the items of the same type as the specific items preceding that phrase. Stated differently, the general phrase authorizes the search for and seizure of only items that are logically related to the items specifically named in the warrant. Given that limited construction of the general phrase, I concur with the majority's conclusion that its inclusion in the warrants in this case did not render them unlawful general warrants.

2. Most of the items specifically named in the warrants were described adequately. However, I believe that the general authorization in each of the four warrants to seize unspecified "notes" and "papers" lacked sufficient detail to satisfy the particularity requirement of the Fourth Amendment.[5] Contrary to the suggestion of the majority, the warrants' specifying murder and cruelty to children as the crimes likely committed does not lend sufficient particularity to the general words "notes" and "papers," because the crimes speci-

---

[2] Majority op. at p. 186 (quoting *State v. Reid,* 687 P2d 861, 867 (Wash. App. 1984)). See *Lance v. State,* 275 Ga. 11, 21 (19) (b) (560 SE2d 663) (2002) (quoting *United States v. Buck,* 813 F2d 588, 591 (II) (2d Cir. 1987), for the proposition that " 'boilerplate' language in a warrant" is more likely to be found permissible when "it was preceded by a list of specific items to be sought"). See also *Andresen v. Maryland,* 427 U. S. 463, 479-482 (III) (96 SC 2737, 49 LE2d 627) (1976) (upholding a clause in a warrant that authorized a search for evidence of the crime of false pretenses regarding a specifically-named parcel of land and that followed an exhaustive list of other, related items to be searched for and seized).

[3] Majority op. at p. 186 (quoting *United States v. Pindell,* 336 F3d 1049, 1053 (II) (D.C. Cir. 2003)).

[4] Black's Law Dictionary, p. 556 (8th ed. 2004).

[5] See 2 LaFave, Search and Seizure, § 4.6 (d), pp. 633-636 (4th ed. 2004).

fied would not generate, in the mind of a reasonable police officer, an implied, common-sense list of predictable documentary evidence that would be readily apparent to the officer when executing such a warrant. Holding otherwise would authorize an indiscriminate rummaging through *all* of the documents at a named location based on a showing of probable cause[6] that some particular document connected to the crime likely exists. In fact, the officer that obtained three of the four warrants at issue in this case actually testified in the hearing held in Reaves's co-defendant's case that she always tries to include phrases such as "any writings" and that she does not feel in any way limited in the items she can seize under such language. I would hold that the trial court must suppress any evidence that would not have been seized if the offending portions of the four warrants generically describing "notes" and "papers" had been omitted.

I am authorized to state that Presiding Justice Hunstein joins in this separate opinion in full and that Justice Melton joins in Division 2 only.

## DECIDED JULY 11, 2008.

*Gary V. Bowman, Christopher E. Chapman*, for appellant.
*Tommy K. Floyd, District Attorney, James L. Wright III, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.

---

[6] Although not raised by Rodney Reaves in *his* interim review, I agree with the argument made by his co-defendant, Charlott Reaves, that no probable cause was shown for a search for "notes" and "papers." See *Reaves v. State*, 284 Ga. 236 (1) (b) (664 SE2d 207) (2008).