IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
December 4, 2024 Session Heard at Clarksville[1]

**STATE OF TENNESSEE v. AMBREIA WASHINGTON**

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
**No. 22-187   Roy B. Morgan, Jr., Judge**

---

**No. W2022-01201-SC-R11-CD**

---

Ambreia Washington ("the Defendant") was convicted by a jury of, among other offenses, unlawful possession of a firearm. Before trial, the Defendant moved to suppress the firearm a law enforcement officer seized from the vehicle the Defendant was driving. The trial court denied the Defendant's motion. On direct appeal, the Court of Criminal Appeals affirmed the trial court's judgments, including the trial court's ruling on the suppression issue. We granted permission to appeal to determine the legality of the officer's warrantless seizure of the firearm. We hold that the seizure was constitutionally permissible under the plain view doctrine. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which HOLLY KIRBY, SARAH K. CAMPBELL, DWIGHT E. TARWATER, and MARY L. WAGNER, JJ., joined. DWIGHT E. TARWATER, J., filed a separate concurring opinion.

Jeremy Epperson, District Public Defender; Brennan M. Wingerter and Brian D. Wilson, Assistant Public Defenders – Appellate Division (on appeal); Parker O. Dixon, Assistant District Public Defender (at trial), for the appellant, Ambreia Tavaris Washington.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Matthew D. Cloutier, Assistant Solicitor General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Oral argument was heard in this case on the campus of Austin Peay State University as part of the S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Jonathan Harwell, Nashville, Tennessee, for the Amicus Curiae, Tennessee Association of Criminal Defense Lawyers.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a Jackson Police Department officer's encounter with Ambreia Washington ("the Defendant") on November 6, 2020. At approximately 3:20 a.m., Officer Joshua Keller responded to a call reporting an automobile accident in a residential area. Officer Keller arrived at the scene and found a vehicle situated partially in the front yard of a residence, facing the wrong side of the road. When Officer Keller approached the vehicle, he found the Defendant in the driver's seat and subsequently observed a handgun lying on the front passenger seat. Officer Keller initially asked the Defendant to remain in his vehicle, but once the officer spotted the handgun, he instructed the Defendant to exit the vehicle. As the Defendant was stepping out of the car, Officer Keller asked if he was a convicted felon. The Defendant responded in the affirmative. At that point, Officer Keller began to handcuff the Defendant, but the Defendant attempted to flee toward the passenger's side of the vehicle. Officer Keller then tased the Defendant, placed him into custody, and seized the handgun.

Based on these events, the Madison County Grand Jury indicted the Defendant on four counts of unlawful possession of a firearm by a convicted felon and other offenses not relevant to this appeal.

Before trial, the Defendant moved to suppress the results from the search and seizure of his person and vehicle. At the motion to suppress hearing, Officer Keller testified that he was dispatched to an automobile accident in the early morning hours of November 6, 2020. Upon arriving at the scene, he saw a vehicle, still running but not in motion, on the wrong side of the road. The vehicle was partially in the roadway and partially in the yard of a residence. Officer Keller testified that the vehicle appeared to have run off the road and struck a mailbox, as the mailbox was tilted. The officer parked directly in front of the vehicle and shined his spotlight on the front of the vehicle, but he never initiated emergency lights or the sirens on his patrol car.

Officer Keller then exited his patrol car to approach the driver's side of the vehicle. As he shined his flashlight into the vehicle, the Defendant "began to wake up." Officer Keller initially instructed the Defendant to stay in the vehicle. After noticing a handgun located on the front passenger's seat, however, the officer told the Defendant to exit the vehicle. As the Defendant was getting out, Officer Keller, without first providing *Miranda* warnings, asked the Defendant if he was a convicted felon. The Defendant answered that he was.

Officer Keller testified that he planned to detain the Defendant in order to confirm his felony status. The officer pinned the Defendant against the vehicle and attempted to handcuff him, but the Defendant broke free and ran around the vehicle toward the passenger's side, where the gun was located. After briefly giving chase, Officer Keller deployed his taser on the Defendant and placed the Defendant under arrest. Officer Keller seized the handgun from the vehicle and checked the Defendant's driver's license and criminal history, although the precise order of events following the arrest is unclear. The driver's license check revealed that the Defendant was driving on a suspended license, and the criminal history search confirmed that the Defendant was a convicted felon.

On cross-examination, Officer Keller stated that he activated his body camera during his encounter with the Defendant but that the footage could not be located. He explained that body camera recordings must be properly classified to be saved, and he may have incorrectly classified the recording of the incident. Officer Keller also stated that the dash camera on his vehicle did not activate because he did not turn on his emergency lights.

The trial court credited Officer Keller's testimony and determined that, given the location of the Defendant's vehicle, the time of day, and the damaged mailbox, Officer Keller had a duty to investigate the situation pursuant to the community caretaking doctrine. The trial court granted the motion to suppress the Defendant's statement that he was a convicted felon because Officer Keller questioned the Defendant without first giving *Miranda* warnings. But the trial court denied the Defendant's motion to suppress the gun, finding that it was properly seized under the plain view doctrine.

At trial, Officer Keller testified consistently with his testimony at the suppression hearing. The jury convicted the Defendant as charged. The Defendant subsequently appealed to the Court of Criminal Appeals. See State v. Washington, No. W2022-01201-CCA-R3-CD, 2023 WL 8933232, at *1 (Tenn. Crim. App. Dec. 27, 2023), perm. app. granted, (Tenn. July 9, 2024). As is relevant to this appeal, the Defendant argued that the trial court erred in denying his motion to suppress the handgun seized from the vehicle he was driving. Id.

The Court of Criminal Appeals affirmed the judgment of the trial court. Id. at *6. The court noted that the circumstances raised concerns about the Defendant's "ability to drive safely away from the scene and questions regarding whether [he] posed a neighborhood safety concern." Id. at *5. Because of these concerns, the court found that Officer Keller was justified in detaining the Defendant pursuant to the community caretaking doctrine while he briefly investigated the situation and that his actions were "reasonably restrained and tailored to the community caretaking need." Id. The court further determined that Officer Keller was justified in detaining the Defendant even after the officer concluded his community caretaking responsibilities due to the Defendant's attempt to flee the scene and Officer Keller's reasonable suspicion that the Defendant had been driving while intoxicated, had damaged property, and posed a threat to the public. Id.

Additionally, the court cited the independent source doctrine for the proposition that "even if the [d]efendant's statement about being a convicted felon was improperly obtained, evidence seized as a result of that statement [could] be admissible if it was discovered through an independent source." Id. at *6. The court held that once Officer Keller conducted a criminal history check, which identified the Defendant as a convicted felon and revealed that he had a suspended driver's license, "the incriminating nature of the handgun, located in plain view on the passenger seat, became apparent, and Officer Keller could seize it pursuant to the plain view doctrine." Id.

The Defendant then filed an application for permission to appeal with this Court and raised the following issue:

> Whether the trial court erred by declining to suppress a handgun seized from a car driven by Defendant, when the illegal nature of the firearm was not immediately apparent to the officer under the plain view doctrine, the investigation into Defendant's history went beyond the scope of the officer's community caretaking function, and the officer failed to give *Miranda* warnings before inquiring into Defendant's status as a convicted felon.

We granted review to consider the issue the Defendant raised. Additionally, we asked the parties for briefing on the following issues:

> (1) [W]hether the temporary seizure of the firearm or Defendant was permissible under the Fourth Amendment because of a threat to the officer's safety, see, e.g., United States v. Bishop, 338 F.3d 623, 628 (6th Cir. 2003); United States v. King, 990 F.2d 1552, 1561 (10th Cir. 1993); United States v. Purvis, 663 F. Supp. 3d 1233, 1249 (D.N.M. 2023), and, if so, whether there was a basis for the State to thereafter seize the firearm permanently without a warrant; and (2) whether evidence of the firearm was admissible under the inevitable discovery/inevitable seizure exception to the exclusionary rule, see State v. Scott, 619 S.W.3d 196, 205 (Tenn. 2021); United States v. Frederick, 152 F. App'x 470, 474 (6th Cir. 2005); Purvis, 663 F. Supp. 3d at 1257.

## II. STANDARD OF REVIEW

On appeal from the denial of a motion to suppress, we uphold the trial court's findings of fact "unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The credibility of witnesses, the weight and value of evidence, and the resolution of conflicting evidence "are matters entrusted to the trial judge as the trier of fact." Id. Appellate courts may consider evidence offered at both the suppression hearing and trial when reviewing the trial court's ruling on a motion to suppress. State v. Henning,

975 S.W.2d 290, 299 (Tenn. 1998). Because the State prevailed in the trial court, it is entitled to the "strongest legitimate view of the evidence . . . as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. The trial court's application of the law to the facts, on the other hand, is reviewed de novo with no presumption of correctness. State v. Tuttle, 515 S.W.3d 282, 299 (Tenn. 2017) (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)).

### III. ANALYSIS

The Fourth Amendment to the United States Constitution prohibits the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV.[2] The requirement for reasonableness protects individuals from "arbitrary invasions" of their privacy and security by government actors. State v. Yeargan, 958 S.W.2d 626 (Tenn. 1997) (quoting Delaware v. Prouse, 440 U.S. 648, 653–54 (1979)). "[T]he general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression." State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010). Such evidence may nevertheless be admissible if the circumstances of the search or seizure fall within one of the few, narrowly drawn exceptions to the Fourth Amendment's warrant requirement. Yeargan, 958 S.W.2d at 629. The government bears the burden of demonstrating that an exception applies. State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008).

One well-established exception to the Fourth Amendment's warrant requirement is the plain view doctrine. State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005); Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971), modified by Horton v. California, 496 U.S. 128 (1990). This limited exception allows law enforcement officers to seize evidence without a warrant when three prerequisites are satisfied:

> (1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was "immediately apparent," i.e., the officer possessed probable cause to believe that the item in plain view was evidence of a crime or contraband.

State v. Guy, 679 S.W.3d 632, 681–82 (Tenn. Crim. App. 2023) (quoting State v. Coulter, 67 S.W.3d 3, 43 (Tenn. Crim. App. 2001), abrogated on other grounds by State v. Jackson,

---

[2] Article I, Section 7 of the Tennessee Constitution likewise protects individuals against unreasonable search and seizures. Because the Defendant did not assert any claims under the Tennessee Constitution, we have no occasion to consider whether the suppression analysis would be different under state constitutional search and seizure protections.

173 S.W.3d 401 (Tenn. 2005)).[3] The plain view doctrine is better understood when it is viewed not so much as a stand-alone exception to the warrant requirement, but rather "as an extension of whatever the prior justification for an officer's 'access to an object' may be." Texas v. Brown, 460 U.S. 730, 738 (1983).

The plain view exception is grounded in the recognition that "once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost." Illinois v. Andreas, 463 U.S. 765, 771 (1983). The purpose of this exception is to spare police officers the inconvenience and risk of leaving the scene to obtain a warrant when the officers lawfully encounter the evidence in plain view. Arizona v. Hicks, 480 U.S. 321, 327 (1987).

The first prerequisite—that the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen—requires little discussion in this case. The Constitution does not bar law enforcement officers from approaching vehicles like Officer Keller did here when an officer possesses "specific and articulable facts which, viewed objectively and in the totality of the circumstances, reasonably warranted a conclusion that a community caretaking action was needed, such as the possibility of a person in need of assistance or the existence of a potential threat to public safety."[4] State v. McCormick, 494 S.W.3d 673, 687 (Tenn. 2016) (quoting State v. Moats, 403 S.W.3d 170, 195 (Tenn. 2013) (Clark and Koch, JJ., dissenting). Even the Defendant does not dispute that Officer Keller initially was acting properly in a community caretaking capacity when he approached the vehicle. Officer Keller was lawfully on the premises when he walked up to the vehicle and when he spotted the gun in plain view.

The second prerequisite, that the officer had a lawful right to access the gun, is satisfied if he had probable cause to believe the vehicle contained contraband. It is well-established that probable cause to believe that a vehicle contains evidence of a crime or contraband authorizes the warrantless search of the vehicle due to the mobility of vehicles and the reduced expectation of privacy in vehicles. State v. Green, 697 S.W.3d 634, 641 (Tenn. 2024); see United States v. Ross, 456 U.S. 798, 805–09, (1982); Brown, 460 U.S. at 741 n.6. Accordingly, if Officer Keller had probable cause to believe the vehicle contained contraband, he also had the right to enter the automobile and access the gun

---

[3] In this case, the Court of Criminal Appeals listed as a fourth requirement that "the items seized were inadvertently discovered." Washington, 2023 WL 8933232, at *6 (quoting State v. Cothran, 115 S.W.3d 513, 524–25 (Tenn. Crim. App. 2003)). However, both the United States Supreme Court and Tennessee courts have dispensed with this fourth requirement. Cothran, 115 S.W.3d at 525; Horton, 496 U.S. at 137–38.

[4] The community caretaking doctrine is another exception to the Fourth Amendment's warrant requirement, typically invoked in the context of a warrantless seizure of a person. State v. McCormick, 494 S.W.3d 673, 680–86 (Tenn. 2016). In this case, we need not decide at what point the Defendant was seized for Fourth Amendment purposes. Instead, we assume for purposes of this appeal that the Defendant was seized for the entirety of the encounter with Officer Keller.

without a warrant. For the same reasons we address below with regard to the third prerequisite for utilization of the plain view doctrine, we conclude that Officer Keller had probable cause to believe the gun was contraband, which means he had lawful access to the gun.

The third prerequisite also turns, at least in part, on whether the officer had probable cause to believe the vehicle contained contraband. It must have been "immediately apparent" to the officer that he had incriminating evidence before him. Horton, 496 U.S. at 136 (citing Coolidge, 403 U.S. at 466). The incriminating nature of an item is "immediately apparent" when there is probable cause to believe the item is evidence of a crime or contraband "without conducting some further search of the object." See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Police officers are not required to "know" that the item is evidence of a crime. "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Brown, 460 U.S. at 738 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Put another way, "[p]robable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband." State v. Bridges, 963 S.W.2d 487, 494 (Tenn. 1997) (citing Brown, 460 U.S. at 742).

Here, Officer Keller was lawfully on the premises when he approached the vehicle the Defendant was driving and when he observed a gun lying on the seat of the vehicle, plainly visible from where he stood outside the open driver's side door. After observing the gun, the officer asked the Defendant if he was a convicted felon. The officer asked this question without first advising the Defendant of his *Miranda* rights. The Defendant responded to Officer Keller's question by admitting he was a convicted felon. While there is nothing inherently illegal about possessing a firearm, it is a crime for a convicted felon to possess a firearm in Tennessee. Tenn. Code Ann. § 39-17-1307(b)(1)(A)–(B) (2018 & Supp. 2024). Thus, if the officer could utilize the Defendant's admission that he was a convicted felon, the admission would be sufficient to "warrant a person of reasonable caution in the belief that the item may be contraband." Bridges, 963 S.W.2d at 494 (citing Brown, 460 U.S. at 742).

In this case, although the trial court declined to suppress the handgun, it did find that the statement made by the Defendant in response to Officer Keller's question about the Defendant's felon status was inadmissible as evidence because the statement was obtained in violation of *Miranda*. Washington, 2023 WL 8933232, at *3–6. The State does not challenge in this Court whether the Defendant was in custody, so we need not consider whether the Defendant was "in custody" for purposes of *Miranda* when Officer Keller asked whether the Defendant was a convicted felon.[5] Like the intermediate appellate court

---

[5] See State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996) (stating that one is "in custody" for purposes of *Miranda* when "under the totality of the circumstances, a reasonable person in the suspect's

below, we assume for purposes of this appeal, but expressly do not decide, that a *Miranda* violation required suppression of the Defendant's statement. See State v. Bristol, 654 S.W.3d 917, 923 (Tenn. 2022) (noting that an appellate court's authority "generally will extend only to those issues presented for review" (quoting Tenn. R. App. P. 13(b))). This circumstance begs the question of whether such a statement obtained in violation of *Miranda* can be used to establish probable cause under the plain view doctrine. This is an issue of first impression before the Court.

The Self-Incrimination Clause of the Fifth Amendment prohibits the government from compelling a criminal defendant "to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, the United States Supreme Court decided that the inherent risk of coercion in custodial interrogations heightens the risk of violating a defendant's privilege against self-incrimination. 384 U.S. 436, 467 (1966). To combat this risk, the Court required that so-called "*Miranda* warnings" be given to suspects who are (1) in custody and (2) subject to interrogation by law enforcement officers. Id. at 444–45. The *Miranda* rule prohibits the government from using any statements elicited from a custodial interrogation in a criminal trial unless the government demonstrates that it used these prophylactic procedural safeguards. Id. at 444.

While the *Miranda* rule prohibits the government from using a defendant's unwarned statements at trial, it does not categorically prohibit the government from using nontestimonial evidence derived from such statements. State v. Climer, 400 S.W.3d 537, 567 (Tenn. 2013) (citing United States v. Patane, 542 U.S. 630, 634 (2004) (plurality opinion); Patane, 542 U.S. at 645 (Kennedy, J., concurring)). An officer's failure to give *Miranda* warnings is not itself a violation of the Fifth Amendment which would require excluding all fruit of the violation. Walton, 41 S.W.3d at 90. Excluding nontestimonial evidence in the absence of a constitutional violation "adds very little to the accused's interest in not being compelled to testify against himself" and "adds significant and unnecessary barriers to the use of otherwise legitimate law enforcement practices." Walton, 41 S.W.3d at 93 n.19. Rather, suppression of the unwarned statements "is a complete and sufficient remedy for any perceived *Miranda* violation." Climer, 400 S.W.3d at 567 (quoting Patane, 542 U.S. at 641–42).

Nevertheless, nontestimonial evidence obtained as a result of an un-*Mirandized* statement must be suppressed when there is an "actual violation of the privilege against self-incrimination, *i.e.,* such as when actual coercion in obtaining the statement is involved." Id. (quoting Walton, 41 S.W.3d at 92). When a defendant's will is overcome so that the statement is a "product of coercion," the statement is not voluntary, and it would violate the Self-Incrimination Clause to use the statement or any resulting evidence in a criminal trial. Id. at 567–68. A court determining voluntariness should take into account

---

position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest").

"both the characteristics of the accused and the details of the interrogation." Id. at 568 (quoting Dickerson v. United States, 530 U.S. 428, 434 (2000)). Relevant considerations include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated[,] or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep[,] or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

Id. (quoting State v. Huddleston, 924 S.W.2d 666, 671 (Tenn. 1996)).

In this case, the Defendant did not argue that Officer Keller used actual coercion in obtaining the Defendant's statement. As a result, the Defendant has forfeited any such argument before this Court. See Hodge v. Craig, 382 S.W.3d 325, 333–34 (Tenn. 2012) (finding that issues which have not been presented to the trial court or the intermediate appellate courts will not be considered by this Court). Even if the Defendant had raised and preserved this issue, the record contains no evidence to support a finding of coercion. Therefore, we conclude that the Defendant's statement was not coerced, and the firearm—nontestimonial evidence derived from the voluntary but unwarned statement—need not be suppressed due to the *Miranda* violation. See Walton, 41 S.W.3d at 96.

The fact that the Defendant's unwarned statement about his felon status was used to establish the probable cause necessary to seize the gun under the plain view doctrine does not change the analysis. Multiple federal circuit courts have held that voluntary but unwarned statements can be used to establish probable cause. In United States v. Phillips, for example, a police officer questioned a suspect in custody without first administering *Miranda* warnings and then used the suspect's statements to demonstrate the probable cause necessary to obtain a search warrant. 468 F.3d 1264, 1265–66 (10th Cir. 2006). The resulting search warrant allowed the officers to collect the suspect's DNA evidence, which ultimately was admitted at trial. Id. The Tenth Circuit explained that it was permissible to rely on the suspect's unwarned statement in obtaining a search warrant—what mattered was that the unlawfully obtained statement itself was not admitted at trial. Id. at 1266; see also United States v. Morales, 788 F.2d 883, 886–87 (2d Cir. 1986) (holding that a statement taken in violation of *Miranda* safeguards could be used to show probable cause for an arrest); United States v. Guillen, 657 F. App'x 690, 692 (9th Cir. 2016) (explaining that unwarned statements "may be used to determine whether probable cause existed even if [the defendant] should first have been administered *Miranda* warnings").

In the same vein, several state courts also have held that statements obtained in violation of *Miranda* may be used to establish probable cause. See e.g., Reaves v. State, 664 S.E.2d 211, 214 (Ga. 2008); Lewis v. State, 2023 Ark. 12, 15 (2023). While some state courts have held that their respective state constitutions prohibit using unwarned statements for any reason (e.g., establishing probable cause), most have concluded that the federal constitution is not so restrictive. Compare State v. Farris, 849 N.E.2d 985, 994–96 (Ohio 2006) (holding that the Ohio Constitution required suppression of evidence seized from the trunk of a suspect's vehicle when the officer's probable cause to search the trunk was based on statements that were obtained in violation of *Miranda*, even though the United States Constitution did not require suppression of the evidence) with Reaves, 664 S.E.2d at 214 (only considering the United States Constitution in determining that unwarned statements could be used to assess probable cause). In Reaves, the Georgia Supreme Court considered whether evidence seized from a defendant's home pursuant to a search warrant was admissible when the officers relied on the defendant's unwarned statements to establish probable cause for the warrant. 664 S.E.2d at 214. The court cited Patane for the proposition that physical evidence resulting from an unwarned but voluntary statement is admissible and said, "[i]t follows that physical evidence seized pursuant to a warrant obtained with a voluntary statement taken in violation of *Miranda* is also admissible." Id. (first citing Patane, 542 U.S. 630; then citing Phillips, 468 F.3d at 1266; and then citing Brown v. State, 663 S.E.2d 749, 754 (Ga. Ct. App. 2008)).

We likewise conclude that Officer Keller was permitted to use the Defendant's unwarned but voluntary statement to establish probable cause under the plain view doctrine. Having determined that Officer Keller had probable cause to believe the gun was contraband, we now return to examining whether the incriminating nature of the firearm in question was "immediately apparent" when Officer Keller did not instantly recognize that the gun was contraband.

The "immediately apparent" requirement is necessary to ensure the plain view exception is not used to "extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge, 403 U.S. at 466. But courts disagree on the precise contours of the requirement. United States v. Pindell, 336 F.3d 1049, 1054–55 (D.C. Cir. 2003) (holding that the "immediately apparent" requirement has sparked debate among courts, especially in cases in which law enforcement officers have to "conduct additional examinations" to determine the significance of an object).

In United States v. Beal, the Sixth Circuit Court of Appeals analyzed this immediacy requirement and concluded that the incriminating nature of an object must be "immediately apparent" to the officer "*at the time* of discovery." 810 F.2d 574, 577 (6th Cir. 1987) (citing United States v. Szymkowiak, 727 F.2d 95, 98 (6th Cir. 1984)). The court stated that "to be immediate, probable cause must be 'the direct result of the officer's instantaneous sensory perception of the object.'" Id. (quoting United States v. McLernon, 746 F.2d 1098,

1124 (6th Cir. 1984)).[6] However, the Sixth Circuit also has explained that whether an officer had probable cause to believe that the incriminating nature of evidence was immediately apparent *at the time of discovery* is just one of three factors in determining whether the criminality of evidence was immediately apparent, "none of which is necessary but each of which is instructive." United States v. Garcia, 496 F.3d 495 (6th Cir. 2007) (citing Beal, 810 F.2d at 576–77).[7]

Moreover, the majority of courts that have considered the issue have rejected the notion that law enforcement officers must recognize the incriminating nature of an object instantaneously to satisfy the "immediately apparent" requirement. See, e.g., United States v. Johnston, 784 F.2d 416, 420 (1st Cir. 1986) (finding that an officer does not have to possess probable cause to believe an item is contraband "when he first view[s] the items"); United States v. Lewis, 864 F.3d 937, 944 (8th Cir. 2017) (indicating that the appropriate time to analyze whether the incriminating nature of an item is immediately apparent is "at the moment" of *seizure*); United States v. Turner, 839 F.3d 429, 433 (5th Cir. 2016) (holding that the unlawfulness of evidence was immediately apparent despite the fact that the officer's conclusion depended on information obtained from the defendant and other officers after the discovery of the evidence); United States v. Jackson, 131 F.3d 1105, 1107–10 (4th Cir. 1997) (concluding that the plain view exception justified the seizure of drug paraphernalia, even though the officer did not recognize the incriminating nature of the paraphernalia until he returned a second time to more closely examine the objects).[8]

One court addressing this issue has noted that the "immediately apparent" requirement is not a strict temporal requirement:

> The Supreme Court has construed "immediately apparent" to mean simply that the viewing officers must have probable cause to believe an item in plain view is contraband before seizing it. So long as the probable cause

---

[6] While Beal has not been overruled, the Sixth Circuit has since upheld seizures under the plain view doctrine in circumstances which indicate a less restrictive interpretation of the immediacy requirement. See, e.g., United States v. Frederick, 152 F. App'x 470, 472–74 (6th Cir. 2005) (upholding the seizure of a firearm under the plain view doctrine despite the officers not recognizing the incriminating nature of the gun the moment they first laid eyes on it).

[7] We note that "[t]hough they are persuasive authority when interpreting the United States Constitution, this Court is not bound by decisions of the federal district and circuit courts. We are bound only by decisions of the United States Supreme Court." State v. Carruthers, 35 S.W.3d 516, 561 n.45 (Tenn. 2000) (citing Strouth v. State, 999 S.W.2d 759, 769 n. 9 (Tenn. 1999); State v. McKay, 680 S.W.2d 447, 450 (Tenn. 1984)).

[8] Notably, at oral argument, both parties agreed that the appropriate time to analyze whether the incriminating nature of an item is immediately apparent is at the time of seizure. Nevertheless, we review this issue independently of the position of the parties.

to believe that items in plain view constitute contraband arises while the police are . . . lawfully on the premises, and their "further investigation" into the nature of those items does not entail an additional and unjustified search of (*i.e.,* a greater physical intrusion than originally justified), or presence on (*i.e.,* a longer intrusion than originally justified), the premises, we see no basis to declare a Fourth Amendment violation. Supreme Court precedent does not dictate that we construe "immediately apparent" necessarily to mean "quickly apparent." Rather, "immediately apparent" in this context means without the necessity of any further search.

State v. Dobbs, 323 S.W.3d 184, 189 (Tex. Crim. App. 2010). Similarly, in United States v. Garces, the District of Columbia Circuit Court of Appeals explained that "although the phrase 'immediately apparent' sounds temporal, its true meaning must be that the incriminating nature of the item must have become apparent, in the course of the search, without the benefit of information from any unlawful search or seizure." 133 F.3d 70, 75 (D.C. Cir. 1998).

We agree with this reasoning. When, as here, an officer develops probable cause to seize an item in plain view without creating a greater intrusion than was originally justified and without the benefit of information derived from an unlawful Fourth Amendment search or seizure,[9] the officer has satisfied the immediately apparent requirement. This approach is consistent with the underlying rationale of the plain view exception. See Dickerson, 508 U.S. at 375 (observing that warrantless seizures of contraband are "deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment").

Officer Keller's question to the Defendant regarding the Defendant's felon status entailed neither a greater physical intrusion than originally justified, nor a longer intrusion than originally justified. Defendant's answer then established probable cause to believe the gun was contraband. We thus conclude that the incriminating nature of the firearm was "immediately apparent." Because all three prerequisites to invoke the plain view doctrine were satisfied, we hold that Officer Keller properly seized the gun pursuant to the plain view exception.

---

[9] We emphasize that the alleged *Miranda* violation in this case presents an issue under the Fifth Amendment, not the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in denying the Defendant's motion to suppress the firearm found in the vehicle the Defendant was driving. Consequently, we affirm the judgment of the Court of Criminal Appeals.[10]

Because the Defendant appears to be indigent, the costs of this appeal are taxed to the State.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[10] Because we conclude that the firearm is admissible under the plain view doctrine, we need not decide whether the evidence would have been admissible under the inevitable discovery/inevitable seizure exception or another exception to the warrant requirement.